JUDGE PRESKA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIRANT NEW YORK, LLC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LOCAL UNION NO. 503 OF | ) |
| THE INTERNATIONAL | ) |
| BROTHERHOOD OF ELECTRICAL | ) |
| WORKERS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

07 CV 4166

Civil Action No.

MAY 29 2007

U.S. CASHIERS

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

Plaintiff Mirant New York, LLC. ("Mirant" or "Company") files this Complaint

against Local Union No. 503 of the International Brotherhood of Electrical Workers

("Union") showing the Court as follows:

NATURE OF ACTION

1.

This is an action, brought pursuant to Section 301 of the Labor Management

Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), seeking (1) a declaratory judgment

that certain disputes between Mirant and the Union are not subject to arbitration and (2) a

preliminary and permanent injunction which would enjoin any arbitration of those

disputes.

PARTIES

2.

Plaintiff Mirant is a Delaware corporation that makes and sells electricity from

generation facilities located in the State of New York.   Plaintiff is an employer in an industry affecting commerce within the meaning of the LMRA.

3.

Defendant Union is a labor organization that is the certified collective bargaining representative for certain employees working in Mirant's generation facilities in the State of New York.  The Union is a labor organization within the meaning of the LMRA.

JURISDICTION

4.

Jurisdiction of this matter is conferred on this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 185(a) and (c).

VENUE

5.

The Union's duly authorized officers or agents are engaged in representing or acting for employee members in Mirant's New York facilities, and, therefore, venue is proper in this Court pursuant to 28 U.S.C. §1391 and 29 U.S.C. §185(a) and (c).

FACTS GIVING RISE TO THE COMPLAINT

6.

Mirant and the Union are parties to a collective bargaining agreement which became effective June 1, 2003, and remains in effect until June 1, 2008 ("CBA").  The CBA generally covers the "rates of pay, hours of work, and other terms and conditions of employment" of certain operations and maintenance employees working at Plaintiff's generation facilities in the state of New York.

7.

Mirant provides employees represented by the Union ("Bargaining Unit Employees") with retirement benefits pursuant to the Mirant Services Pension Plan for Bargaining Unit Employees (the "Mirant Plan").

8.

The Mirant Plan is a defined benefits pension plan as defined under and governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

9.

All Bargaining Unit Employees are informed that they may obtain a copy of the Mirant Plan documents at any time upon request from the Company.

10.

Pursuant to ERISA, 29 U.S.C. § 1022, Mirant promulgates and distributes a Pension Summary Plan Description ("SPD") to all employees covered by the Mirant Plan. The SPD describes the benefits provided under the Mirant Plan as well as the administrative process by which benefit claims are decided and, if necessary, reviewed.

11.

Article 10.1 of the Mirant Plan states that "the general administration of the Plan shall be placed in a Retirement Board" and Article 10.3 states that "[f]or the purposes of compliance with the provisions of ERISA, the Retirement Board shall be deemed the "administrator" of the Plan as that term is defined in ERISA."

12.

Article10.3 of the Mirant Plan states that "[t]he Retirement Board ..., shall have *exclusive* discretionary authority for the following:

LEGAL02/30385397v2

(a) construing and interpreting the Plan;

(b) determining all questions effecting the eligibility of any Employee, retired Employee, former Employee, Provisional Payee, or alternate payee;

(c) determining all questions affecting the amount of the benefit payable hereunder;

(d) ascertaining the persons to whom benefits shall be payable under the provisions hereof;

(e) to the extent provided in the Plan, authorizing and directing disbursements of benefits from the Plan;

(f) making *final and binding* determinations in connection with any questions of fact which may arise regarding the operation of the Plan;

(g) making such rules and regulations with reference to the operation of the Plan as it may deem necessary or advisable, provided that such rules and regulations shall not be inconsistent with the express terms of the Plan or ERISA;

(h) prescribing such procedures and adopting such forms as it determines necessary under the terms of the Plan; and

(i) reviewing denials of claims for benefits as may arise."

(emphasis added)

13.

Pursuant to the Mirant Plan, "[a]ny action by the Retirement Board under this Section 10.3 shall be binding and conclusive."

14.

The Mirant Plan and SPD provide detailed information about the retirement benefits to which Bargaining Unit Employees are entitled and how such benefits are calculated.

15.

The Mirant Plan and SPD provide detailed information about how retirement benefit determinations are made by the Plan Administrator and how benefit determinations may be appealed if the employee disagrees with the Plan Administrator's benefit determination.

The MacDonald Grievance

16.

In January 2006, Bargaining Unit Employee Robert MacDonald, who was out of work on long-term disability, requested a Pension Initiation Statement from the Plan Administrator to determine whether his retirement benefits would be greater under the Mirant Plan if he elected to take "early retirement" benefits or, instead, chose "disability retirement" benefits.

17.

Under the terms of the Mirant Plan, MacDonald was eligible for either type of benefit and it was his choice as to which benefit he would receive.

18.

Under the Mirant Plan, Bargaining Unit Employees between the ages of 58 and 62 who elect "early retirement" get actuarially reduced benefits but are eligible for an additional temporary early retirement supplement of $600 per month (the "Supplement")

19.

Under the Mirant Plan, Bargaining Unit Employees who take "disability retirement" are not eligible for the Supplement, regardless of their age at retirement.

20.

On or about January 5, 2006, Mirant provided MacDonald with the Plan Administrator's pension calculation statements showing what MacDonald's retirement benefits would be if he took "early retirement" benefits and what they would be if he took "disability retirement" benefits under the Mirant Plan.

LEGAL02/30385397v2

21.

After receiving the benefit calculations statements, on or about January 31, 2006, MacDonald elected to receive disability retirement benefits effective January 1, 2006.

22.

Because of his election to receive disability retirement benefits (rather than early retirement benefits), MacDonald did not receive the Supplement.

23.

MacDonald did not appeal the Plan Administrator's determination of his retirement benefits under the claims review process set forth in the Mirant Plan and the SPD.

24.

Instead, in February or March 2006, the Union filed Grievance No. LV-11-06 ("MacDonald Grievance") alleging that Mirant violated Appendix D of the CBA when it chose not to pay MacDonald the Supplement.

25.

Appendix D of the CBA is a summary of certain terms of the Mirant Plan. Specifically, Appendix D states in relevant part:

> The following is a summary of certain terms of two pension programs under [the Plan] ... This summary is not intended to be a SUMMARY PLAN DESCRIPTION or a PENSION PLAN DOCUMENT as required under [ERISA].

26.

Appendix D of the CBA does not impose any obligations on either the Union or Mirant; rather, Appendix D simply summarizes obligations set forth fully in the Mirant Plan and SPD.

LEGAL02/30385397v2

27.

Appendix D of the CBA summarizes the Mirant Plan's provisions regarding early

retirement and disability retirement as follows:

Early Retirement

Eligible after ten (10) years of Benefit Service and attainment of age 55.
Benefit is the accrued benefit at early retirement date, reduced by a certain
percentage if benefit starts prior to age 60. No reduction applies if age
plus service is at least 85 points. If benefit starts between the ages of 58
and 62, an early retirement supplement is paid until age 62. The
supplement is an additional $600 per month. The supplement, however,
will not be paid to the extent a supplement is paid under the O&R Plan.
…

Disability

Eligible after five (5) years of Vesting Service. Employee has the option
of commencing his/her disability pension benefit as of disablement or
deferring the receipt of any pension to age 65 and continuing to earn
service while on long-term disability (up to age 65) provided he/she stays
on long-term disability.

28.

Even though the Plan Documents (and the summary of the Plan Documents

contained in the CBA) do not provide for the Supplement to be paid with disability

retirement benefits, the Union argued that, although he elected disability retirement over

early retirement, MacDonald should still receive the Supplement.

29.

The Union's argument was based on its contention that Orange & Rockland

Utilities, Inc., who owned the New York generating plants prior to Mirant, paid a

supplement to its bargaining unit employees who took disability retirement without

regard to the terms of its benefit plan documents.

LEGAL02/30385397v2

30.

MacDonald is the first Bargaining Unit Employee to elect disability retirement benefits under the Mirant Plan.

31.

The Union relied on alleged past practices despite the language of Article 11.2 of the CBA, commonly referred to as a "zipper clause," which states as follows:

> 11.2    Past Practice
>
> All letters of intent, memos of agreement, arbitration findings, memorandums of understanding, settlement of grievances, practices considered past practices or standing orders that affect the intent of any prior labor agreements, dated on, about or before June 1, 2003, are terminated as of the effective date of this Agreement.

32.

Mirant and the Union were unable to resolve the MacDonald Grievance during the grievance process. Therefore, on May 25, 2006, the Union referred the grievance to the American Arbitration Association ("AAA") for arbitration pursuant to Article 9.1(e) of the CBA.

33.

The setting of a hearing date for the arbitration of the MacDonald Grievance is currently pending.

34.

Mirant has objected to arbitration of the MacDonald Grievance on grounds that the dispute is not arbitrable. Mirant has maintained that the dispute is not arbitrable because any dispute concerning the calculation of retirement benefits under the Mirant Plan is subject to the mandatory, conclusive, and binding determination of the Plan

LEGAL02/30385397v2

Administrator and the claims review process as set forth in the Mirant Plan and SPD.

Mirant has conveyed its arbitrability objection to both the Union and AAA.

35.

Pursuant to the terms of the CBA, an arbitrator's jurisdiction is limited to determining violations of the CBA, and the arbitrator does not have the power to set aside, modify, or alter any of the terms of the CBA.

36.

While the dispute concerning the arbitrability of the MacDonald Grievance has been pending, Mirant, pursuant to the Mirant Plan's claims review procedure, submitted an appeal on MacDonald's behalf to the Mirant Benefits Committee (the "MBC") regarding the fact that he is not receiving the Supplement.

37.

This appeal was denied on April 5, 2007, because it was determined that MacDonald's benefits calculation was correct under the Mirant Plan.  However, MacDonald was informed again that, at any time prior to reaching age 65, he could choose to elect an early retirement benefit (rather than a disability retirement benefit), and that if he did so between the ages of 58 and 62, he could receive the Supplement until age 62.

## The Bakker Grievance

38.

In March 2006, Bargaining Unit Employee Menso Bakker requested an estimate of his "early retirement" benefit under the Mirant Plan.

39.

Company records show and the Plan Administrator found that Bakker voluntarily terminated his employment with Mirant on May 13, 2000, and was rehired by the Company on October 20, 2000.

40.

The Mirant Plan provides two different retirement benefit programs, one for employees hired on or before June 1, 2000 ("Traditional Retirement Program") and one for employees hired or *rehired* after June 1, 2000 ("New Retirement Program").

41.

Prior to the voluntary termination of his employment, Bakker had accrued benefits under the Traditional Retirement Program; however, when he was rehired after June 1, 2000, he was then covered under the New Retirement Program.

42.

Pursuant to the terms of the Mirant Plan, the New Retirement Program does not provide the early retirement Supplement, while the Traditional Retirement Program does provide the early retirement Supplement.

43.

The Plan Administrator provided Bakker with a retirement benefits calculation in response to his request.  Because Bakker was rehired after June 1, 2000, under the New Retirement Program, he was not entitled to receive the Supplement.

44.

Bakker did not appeal the Plan Administrator's determination of his retirement benefits through the claims review process provided by the Mirant Plan and the SPD.

45.

Instead, in March or April 2006, the Union filed Grievance No. HYD-01-06

("Bakker Grievance"), alleging that Mirant violated Appendix D of the CBA when it

chose not to pay Bakker the Supplement.

46.

Appendix D of the CBA summarizes the portions of the Mirant Plan which

address the differences in early retirement benefit calculations under the Traditional

Retirement Program compared to early retirement benefit calculations under the New

Retirement Program. The relevant portion of Appendix D reads as follows:

> There are two pension programs available to New York union employees
> under the Plan and eligibility depends on the date of hire. Employees will
> either participate in the MIRANT NEW YORK, INC. TRADITIONAL
> PENSION or the NEW YORK RETIREMENT PROGRAM. (The NEW
> RETIREMENT PROGRAM provides a profit sharing opportunity which
> will be provided under a separate plan.) In addition to the pension and
> profit sharing plans, the Company offers an EMPLOYEE SAVINGS
> PLAN (401(k) PLAN) to all New York union employees.
>
> MIRANT NEW YORK, INC. TRADITIONAL PENSION PROGRAM
>
> Eligibility, Participation and Date of Application
>
> All eligible full time employees hired on or before 06/01/00 will be
> eligible for the Mirant New York, Inc. Traditional Pension Program.
> Participation begins on the 1st of the month after completion of one (1)
> year of Eligible Service. If a participant terminates his/her employment
> and is later rehired, the employee will be covered by the New Retirement
> Program after rehire.
>
> NEW RETIREMENT PROGRAM
>
> Eligibility and Participation
>
> All eligible full time employees hired or rehired after 06/01/00.
> Participation begins 1st of month after completion of one (1) year of
> Eligibility Service, but not before 07/01/01.

LEGAL02/30385397v2

Early Retirement

Eligible after ten (10) years of Benefit Service and attainment of age 50.
Benefit is the accrued benefit at early retirement date reduced by a certain
percentage (which changes at certain ages) for each year benefit is paid
prior to age 65.  There is no opportunity for an unreduced benefit for early
retirement and there is no early retirement supplement.

47.

Even though the Mirant Plan (and the summary of the Mirant Plan contained in

the CBA) clearly does not provide a Supplement for early retirement benefits under the

New Retirement Program, the Union nevertheless argued during the grievance process

that Bakker should receive the Supplement.

48.

The Union's argument was based on its contention that Bakker was not hired or

*rehired* after June 1, 2000, which triggers the application of the New Retirement Program

under the terms of the Mirant Plan.

49.

The Union made this argument despite the fact that Article 10.3 of the Mirant

Plan states that the Plan Administrator has exclusive authority to make "final and binding

determinations in connection with any questions of fact which may arise regarding the

operation of the Plan" and that any action by the Plan Administrator under Section 10.3

"shall be binding and conclusive."

50.

Mirant and the Union were unable to resolve the Bakker Grievance during the

grievance process.  Therefore, on February 7, 2007, the Union requested an arbitration to

be conducted by the American Arbitration Association ("AAA"), pursuant to Article 9.1(e) of the CBA.

### 51.

Mirant has at all times maintained that the Bakker Grievance is not arbitrable because a dispute concerning retirement benefits under the Mirant Plan is subject to the mandatory, conclusive, and binding determination of the Plan Administrator and the claims review process as set forth in the Plan Documents. Mirant has conveyed its objection to the arbitrability of the Bakker Grievance to both the Union and AAA.

### 52.

The Union and AAA have disregarded Mirant's objection to the arbitrability of the Bakker Grievance, and AAA has stated that absent an agreement by the parties or a court order staying the matter, it will continue to process the Union's demand for arbitration.

### 53.

The setting of a hearing date for the arbitration of the Bakker Grievance is currently pending.

### 54.

While the dispute concerning the appropriateness of the Bakker Grievance has been pending, an appeal was submitted under the Mirant Plan's appeal procedure on Bakker's behalf to the Mirant Benefits Committee (the "MBC") regarding the question of whether he is entitled to the Supplement.

55.

This appeal was denied on April 5, 2007, because Mirant must provide retirement benefits according to the provisions of the Mirant Plan and because the Plan Administrator's calculation of Bakker's benefits is correct under the terms of the Mirant Plan.

## COUNT 1 – DECLARATORY JUDGMENT

56.

Plaintiff realleges Paragraphs 1-55 of the Complaint as if fully set forth herein.

57.

The Mirant Plan is a qualified pension benefit plan as defined and governed by ERISA.

58.

Under the Mirant Plan, the Plan Administrator has the "exclusive" authority to interpret and apply the Mirant Plan and make benefit determinations under the Mirant Plan, and such actions by the Plan Administrator are "binding and conclusive."

59.

The CBA merely provides a summary of certain terms of the Mirant Plan and the SPD and does not create any obligations that are not included in the Plan Documents.

60.

The mandatory, conclusive, and binding authority given to the Plan Administrator and the claims review process under the Mirant Plan evidences an intent to exclude disputes concerning the calculation of retirement benefits from arbitration under the

CBA. Therefore, the pending disputes concerning the MacDonald and Bakker grievances are not arbitrable.

61.

This Complaint presents an actual controversy between Mirant and the Union, and the Court has jurisdiction and authority to issue a declaratory judgment under Section 301 of the LMRA.

62.

A declaratory judgment should be entered declaring that the MacDonald and Bakker Grievances are not arbitrable under the CBA.

63.

A declaratory judgment should be entered declaring that all disputes regarding the calculation of retirement benefits under the Mirant Plan are not subject to the grievance and arbitration process provided by the CBA.

## COUNT 2 – INJUNCTIVE RELIEF

64.

Plaintiff realleges Paragraphs 1-63 of the Complaint as if fully set forth herein.

65.

The MacDonald and Bakker Grievances concerning the calculation of retirement benefits under the Mirant Plan are not arbitrable, and any arbitration award concerning those disputes would not be enforceable.

66.

Mirant would suffer irreparable harm if forced to arbitrate issues that it did not agree to arbitrate and for which any arbitration award would be unenforceable.

LEGAL02/30385397v2

67.

This Court has the jurisdiction and authority to issue an injunction in this action under Section 301 of the LMRA.

68.

An injunction should be issued to enjoin the Union from pursuing arbitration of the MacDonald and Bakker grievances because the disputes are not arbitrable under the CBA.

69.

An injunction should be issued to enjoin the Union from filing any grievance and seeking arbitration of any dispute regarding the calculation of retirement benefits under the Mirant Plan.

PRAYER FOR RELIEF

Based on the foregoing, Plaintiff Mirant New York, LLC respectfully asks this Court grant the following relief:

(1)    an Order granting preliminary and permanent injunctive relief preventing the Defendant from pursuing any further arbitral proceedings with respect to the MacDonald and Bakker Grievances;

(2)    an Order declaring that Plaintiff has no obligation to participate in any of the grievance and arbitration procedures contained in Article 9 of the CBA for any disputes regarding retirement benefits determinations made under the Mirant Plan;

(3)    an Order permanently enjoining Defendant from filing or pursuing to arbitration any grievances challenging retirement benefit determinations made under the Mirant Plan;

(4)    an award of costs and attorneys fees to Plaintiff; and

(5)    any other such relief as the Court finds appropriate.


Dated: May 29, 2007

                                        Respectfully submitted,

                                        _Piret Loone_

                                        Piret Loone (PL 6597)
                                        ALSTON & BIRD, LLP
                                        90 Park Avenue
                                        New York, NY 10016-1387
                                        Telephone: 212-210-9400
                                        Facsimile: 212-210-9444

Of Counsel:
Forrest W. Hunter
ALSTON & BIRD, LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000