IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MIRANT NEW YORK, INC.,      )
                             )
          Plaintiff,       )
                             )
    vs.                   )     Civil Action No. 07-CV-4166 (LAP)
                             )
LOCAL UNION NO. 503 OF     )
THE INTERNATIONAL         )
BROTHERHOOD OF ELECTRICAL   )
WORKERS,                 )
                             )
         Defendant.    )
                             )

## MEMORANDUM IN SUPPORT OF PLAINTIFF MIRANT NEW YORK, INC.'S MOTION FOR PRELIMINARY INJUNCTION

Piret Loone (PL 6597)
ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016-1387
Telephone: 212-210-9400
Facsimile: 212-210-9444

*Counsel for Plaintiff Mirant New York, Inc.*

Of Counsel:
Forrest W. Hunter
ALSTON & BIRD, LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................2

      A.    Relationship of the Parties ..........................................................................2

      B.    The Underlying Dispute Between Mirant and the Union ...............................2

            1.    Dispute Regarding Disability Retirement Benefits of Robert
                  MacDonald ........................................................................................2

                  a.    MacDonald requests and Mirant provides a benefit
                        determination under the Plan .....................................................2

                  b.    The Union files a grievance on behalf of MacDonald ....................5

            2.    Dispute Regarding Retirement Benefits of Menso Bakker .........................7

                  a.    Bakker requests and Mirant provides an retirement benefits
                        calculation ..............................................................................7

                  b.    The Union files a grievance on behalf of Bakker ...........................8

III.  ARGUMENT AND CITATION TO AUTHORITY .......................................................10

      A.    Legal Standard for Preliminary Injunction .................................................10

      B.    Irreparable Harm: Mirant Will Suffer Irreparable Harm if Forced to Arbitrate
            a Dispute that it Did Not Agree to Arbitrate ...............................................11

      C.    Likelihood of Success on the Merits: Mirant is Likely to Succeed on the
            Merits of this Action Because the Underlying Dispute is Not Arbitrable ............13

            1.    The Language of the CBA Establishes that the Retirement Benefit
                  Disputes Are Not Arbitrable and Must be Decided by the Plan
                  Administrator and Reviewed Pursuant to the Plan's Review
                  Procedures ........................................................................................13

            2.    The Plan, Which is Incorporated by Reference into the CBA,
                  Establishes that the Dispute is Not Arbitrable ........................................14

IV.   CONCLUSION ....................................................................................................20

i

<u>TABLE OF AUTHORITIES</u>

**Cases**

*AT&T Techs. Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)..................................11

*Castlewood (US), Inc. v. Nat'l Indemnity Co.*, 2006 WL 3026039, at *4 (S.D.N.Y. Oct. 24, 2006)..................................................................................................................................10, 11, 12

*Cleveland Wrecking Co. v. Iron Workers Local 40*, 136 F.3d 884, 888 (2d Cir. 1997)...............12

*Diamond Glass Corp. v. Glass Warehouse Workers and Paint Handlers Local Union 206*, 682 F.2d 301, 303 (2d Cir. 1982) ............................................................................................11

*Fin. Printing v. N.L.R.B.*, 501 U.S. 190, 208 (1991) ..................................................................12

*Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601, 605 (2d Cir.1991)..................................11, 13

*Int'l Trust Co. of Berm. V. Fahnstock & Co.*, 1995 WL 606275, at *3 (S.D.N.Y. Oct. 12, 1995)..........................................................................................................................................12

*International Association of Machinists and Aerospace Workers v. Waukesha Engine Division, Dresser Industries, Inc.*, 17 F.3d 196, 198 (7th Cir. 1994)........................................17

*International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996).............................10

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 27 (2d Cir. 1995) ...........11

*Leed Architectural Prods., Inc. v. United Steelworkers of America*, 916 F.2d 63, 65 (2d Cir. 1990)...................................................................................................................................11, 13

*Local Union No. 4-449, Oil, Chemical and Atomic Workers Union v. Amoco Chemical Corp.*, 589 F.2d 162 (5th Cir. 1979).....................................................................................17

*Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997)...........................................................................................................................10, 12, 13

*Merrill Lynch Inv. Mangers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) .....................12

*Mt. Ararat Cemetary v. Cemetary Workers. & Green Attendants Union Local 365*, 975 F. Supp. 445 (E.D.N.Y. 1997) ....................................................................................................12

*PDG Chemical, Inc. v. The Oil, Chemical and Atomic Workers Int'l Union*, 164 F. Supp. 2d 856 (E.D. Tex. 2001) ...........................................................................................................17, 18

*Printing Specialties and Paper Productions Union v. Nabisco Brands, Inc.*, 833 F.2d 102 (7th Cir. 1987) ..........................................................................................................................16

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) .................................11

*Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 879 F. Supp. 403, 404 (S.D.N.Y. 1995).........................................................................................................................................12

*Tellium, Inc. v. Corning, Inc.*, 2004 WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004) .................11, 12

*Torrington Co. v. Metal Prods. Workers Union Local, 1645*, 362 F.2d 677, 680 & n. 5 (2d Cir.1966)..............................................................................................................................11, 13

*Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).......................12

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ...................11

*USW v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th Cir. 1998) ..............................15, 16

I.    INTRODUCTION

Mirant and Defendant International Brotherhood of Electrical Workers ("Union") are parties to a Collective Bargaining Agreement ("CBA") pursuant to which the parties have agreed to arbitrate certain disputes governed by the terms of the CBA.  The Union, however, has moved to arbitrate disputes that are clearly not within the scope of the arbitrator's authority under the CBA and which the parties have clearly not agreed to arbitrate.  Specifically, the Union has demanded arbitration of disputes regarding the calculation of pension benefits under the Mirant Services Pension Plan for Bargaining Unit Employees (the "Mirant Plan"), which is a defined benefit plan as defined and governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  The Mirant Plan contains express language which states that the "Plan Administrator" (as defined by ERISA) has exclusive, final, and binding authority to, among other things, determine benefit calculations for employees covered by the Mirant Plan.  Furthermore, the Mirant Plan and the Pension Summary Plan Description ("SPD") (which summarizes the terms of the Mirant Plan) set forth a mandatory, exclusive, and final claims review process whereby employees can appeal the decision of the Plan Administrator.

Importantly, neither the Mirant Plan nor the CBA, which merely summarizes "certain terms" of the Mirant Plan, provide for benefit calculations, or challenges to benefit calculations, to be submitted to arbitration under the CBA.  Indeed, the terms of the Mirant Plan and the CBA evidence the clear intent of the parties to submit all benefit calculations, and challenges thereto, to the exclusive, final, and binding ERISA mandated procedures set forth in the Mirant Plan and incorporated by reference into the CBA.

Mirant has made its objections to arbitration known to both the Union and the American Arbitration Association ("AAA"); however, both the Union and AAA continue to pursue arbitration of the disputes.  Because Mirant would be irreparably harmed if forced to expend time

and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable (because the arbitrator would be acting outside the authority granted to him by the CBA), the Company is entitled to a preliminary injunction which would enjoin any arbitration over the underlying disputes.

## II.    STATEMENT OF FACTS

A.    Relationship of the Parties.

Plaintiff Mirant is a corporation that makes and sells electricity from generation facilities located in the State of New York.  Defendant Union is the certified collective bargaining representative for certain employees working in Mirant's New York facilities.  Mirant and the Union are parties to the CBA, which became effective June 1, 2003, and remains in effect until June 1, 2008.  (CBA, Article 14.)[1]

B.    The Underlying Dispute Between Mirant and the Union.

The underlying dispute between Mirant and the Union involves two grievances brought by the Union to contest pension benefit calculations for two Mirant employees.  Mirant provides employees represented by the Union ("Bargaining Unit Employees") with retirement benefits pursuant to the Mirant Plan.[2]  The Mirant Plan is a defined benefit pension plan as defined under and governed by ERISA.

1.    *Dispute Regarding Disability Retirement Benefits of Robert MacDonald.*

a.    MacDonald requests and Mirant provides a benefit determination under the Plan.

In January 2006, Mirant employee (and Union member) Robert MacDonald, who was out of work on long term disability, requested a Pension Initiation Statement to determine whether

---

[1]    A true and correct copy of the CBA is attached hereto as Exhibit A.

[2]    A true and correct copy of the Mirant Plan is attached to the Declaration of Julie Johnson as Exhibit 1.   The Declaration of Julie Johnson is attached hereto as Exhibit B.

his retirement benefits would be greater under the Mirant Plan if he elected to take "early

retirement" benefits or, instead, chose to take "disability retirement" benefits.  Under the Mirant

Plan, MacDonald was eligible for either type of benefit; he just had to choose which one he

wanted to receive.

MacDonald correctly recognized that, under the Mirant Plan, he was required to submit a

Pension Initiation Statement to the Plan's Retirement Board.  (Plan at Article X, pp. 38-41.)  The

Plan states that the Retirement Board is the "Plan Administrator" as that term is defined by

ERISA.  (Plan at 10.4, p. 39.)  The Retirement Board is responsible for the "general

administration of the Plan."  (Plan 10.1, p. 38.)  More specifically, the Plan states that "[t]he

Retirement Board ..., shall have *exclusive* discretionary authority for the following:

> (a) construing and interpreting the Plan;
> (b) determining all questions effecting the eligibility of any Employee, retired
>     Employee, former Employee, Provisional Payee, or alternate payee;
> (c) determining all questions affecting the amount of the benefit payable
>     hereunder;
> (d) ascertaining the persons to whom benefits shall be payable under the
>     provisions hereof;
> (e) to the extent provided in the Plan, authorizing and directing disbursements of
>     benefits from the Plan;
> (f) making *final and binding* determinations in connection with any questions of
>     fact which may arise regarding the operation of the Plan;
> (g) making such rules and regulations with reference to the operation of the Plan
>     as it may deem necessary or advisable, provided that such rules and
>     regulations shall not be inconsistent with the express terms of the Plan or
>     ERISA;
> (h) prescribing such procedures and adopting such forms as it determines
>     necessary under the terms of the Plan; and
> (i) reviewing denials of claims for benefits as may arise.

(Plan at 10.3, pp. 38-39) (emphasis added.)  The Mirant Plan further states that "[a]ny action by

the Retirement Board under this Section 10.3 shall be *binding and conclusive*."  (Plan at 10.3, p.

39) (emphasis added.)  In addition, the Mirant Plan's SPD, which Mirant provides to all

employees covered by the Mirant Plan, provides a detailed summary of the benefit claims

procedure, review process, and the employees' rights under ERISA.  (SPD at 26-32.)[3]

On or about January 5, 2006, Mirant's Plan Administrator responded to MacDonald's

request by providing MacDonald with pension calculation statements showing what his

retirement benefits would be under the Mirant Plan if he took "early retirement" and what they

would be if he took "disability retirement."  Under the Mirant Plan, employees between the ages

of 58 and 62 who elect "early retirement" benefits receive actuarially reduced benefits but are

eligible for an additional early retirement supplement of $600 per month (the "Supplement").

(Plan at Sch B-8.)  On the other hand, under the Mirant Plan and as described in the SPD, the

Supplement is *not* provided to employees who elect "disability retirement" benefits.

After receiving his pension calculation statements from the Plan Administrator,

MacDonald elected disability retirement benefits effective January 1, 2006.  As provided in the

Mirant Plan and the SPD (together referred to as the "Plan Documents") and as shown on the

pension calculation statements provided to MacDonald prior to his election of benefits, there was

no Supplement available with a disability retirement election.  Therefore, because MacDonald

chose to receive disability retirement benefits, he did not receive a Supplement. [4]  MacDonald

did not appeal the Plan Administrator's determination of his benefits through the "binding and

conclusive" ERISA mandated appeals process provided by the Mirant Plan and the SPD.

---

[3]    There are two SPD's relevant to the present action, one that applies to employees hired or
rehired after June 1, 2000 ("March 2002 SPD"), and one that applies to employees hired on or before
June 1, 2000 ("September 2002 SPD").  True and correct copies of the March 2002 SPD and
September 2002 SPD are attached as Exhibits 2 and 3 to the Declaration of Julie Johnson.  For
purposes of this Memorandum, both SPDs are simply referred to and cited as "SPD."

[4]    Presumably, MacDonald elected to received disability retirement benefits rather than early
retirement benefits because disability retirement benefits are not actuarially reduced whereas early
retirement benefits are (i.e., his monthly disability retirement benefit would be greater).  Again, prior
to his election of benefits, MacDonald was provided benefit calculation statements for both disability
retirement benefits and early retirement benefits.

b. The Union files a grievance on behalf of MacDonald.

Instead of appealing his disability retirement calculation in accordance with the binding

and conclusive claims review process provided in the Plan Documents, in early 2006, the Union

filed Grievance No. LV-11-06 on MacDonald's behalf ("MacDonald Grievance"), alleging that

Mirant violated Appendix D of the CBA when it chose not to pay MacDonald the Supplement in

addition to his disability retirement benefit. Appendix D of the CBA summarizes parts of the

Mirant Plan, including a discussion of the early retirement benefit, which provides the

Supplement to employees, and the disability retirement benefit, which does not provide the

Supplement. (CBA, Appendix D at p. 41.) Importantly, the CBA makes clear that Appendix D

is merely "a summary of certain terms of two pension programs under [the Plan] ...." (CBA,

Appendix D, p. 39.) Moreover, Appendix D expressly states that "[t]his summary is not

intended to be a SUMMARY PLAN DESCRIPTION or a PENSION PLAN DOCUMENT as

required under the Employee Retirement Income Security Act ("ERISA")." (CBA, Appendix D

at p. 39.) Appendix D does not impose any obligations on either the Union or the Company

other than those explained fully in the Mirant Plan.

Although the Plan Documents (and the summary of the Plan contained in the CBA)

clearly do not provide a Supplement for disability retirement benefits, the Union nevertheless

argued during the grievance process that MacDonald should receive the Supplement. The basis

of the Union's argument appears to be that the employer who owned Mirant's New York

facilities before Mirant (Orange and Rockland Utilities, Inc.) used to pay a Supplement to

employees who elected disability retirement. The Union relied on this "past practices" argument

because it cannot point to any language in the Plan Documents (or the CBA language that

summarizes certain terms of the Plan Documents) which would provide the Supplement to

employees who elect disability retirement benefits. The Union made this argument despite the following "zipper clause" in the CBA:

> 11.2    Past Practices
> All letters of intent, memos of agreement, arbitration findings, memorandums of understanding, settlement of grievances, practices considered past practices or standing orders that affect the intent of any prior labor agreements, dated on, about or before June 1, 2003., are terminated as of the effective date of this Agreement.

(CBA at 11.2, pp.29-30.)

Mirant and the Union were unable to resolve the MacDonald Grievance during the grievance process.[5] Therefore, on May 25, 2006, the Union requested an arbitration to be conducted by AAA, pursuant to Article 9.1(e) of the CBA. The setting of a hearing date for arbitration is currently pending. Mirant maintains that the MacDonald Grievance is not arbitrable because any dispute concerning retirement benefits under the Mirant Plan is subject to the mandatory, conclusive, and binding determination of the Plan Administrator and the claims review process as set forth in the Plan Documents. Mirant's position has been that disputes over retirement benefit calculations under the Mirant Plan are outside the scope of the arbitrator's jurisdiction and authority which are expressly limited by the CBA. (CBA, Article 9.2(b), p. 28.) Mirant's objection to the arbitration and its position regarding the non-arbitrability of the MacDonald Grievance was set forth in a February 12, 2007 letter from Mirant's in-house counsel to the Union. A copy of this letter was also sent to AAA.

Because MacDonald failed to appeal his disability retirement benefit calculation as required by the claims review process under the Plan Documents, an appeal was submitted on his behalf by the Company, pursuant to the terms of the Mirant Plan. The appeal contested the Plan Administrator's determination that MacDonald was not entitled to receive the Supplement. This

---

[5]    The grievance process is described in detail in Article 9 of the CBA at pp. 28-29.

appeal was denied on April 5, 2007. Through the claims review process it was determined that Mirant is required by ERISA to provide benefits according to the Plan and that MacDonald's disability retirement benefit was correctly determined by the Plan Administrator.[6] After the appeal was denied, Mirant again informed MacDonald that, under the Plan, at any time prior to reaching his normal retirement age of 65, he could choose to elect an early retirement benefit rather than a disability retirement benefit, and that if he did so between the ages of 58 and 62, he would receive actuarially reduced benefits and receive the Supplement until age 62.

Despite Mirant's objection to arbitration of the MacDonald Grievance, the Union continues to seek arbitration of the dispute. Because the MacDonald Grievance is not arbitrable, and Mirant would be irreparably harmed by being forced to arbitrate a matter which it did not agree to arbitrate under the CBA, the Company filed the present action seeking (1) a declaratory judgment holding that the grievance is not arbitrable, and (2) an injunction to stop the arbitration.

   2.    *Dispute Regarding Retirement Benefits of Menso Bakker.*

      a. Bakker requests and Mirant provides a retirement benefits calculation.

In March of 2006, Bargaining Unit Employee Menso Bakker requested an estimate of his "early retirement" benefits under the Mirant Plan. Company records show, and the Plan Administrator found, that Bakker voluntarily terminated his employment with Mirant on May 13, 2000, and was rehired by the Company on October 20, 2000. The Mirant Plan provides two different retirement benefit programs, one for employees hired on or before June 1, 2000 ("Traditional Retirement Program") and one for employees hired *or rehired* after June 1, 2000 ("New Retirement Program"). (*Compare* Mirant Plan at Sch. B-1 to B-19, "I. New York Employees Hired On or Before June 1, 2000" *with* Sch. B-19 to B-22, "II. New York

---

[6]      A true and correct copy of the April 5, 2007 letter from Mirant to MacDonald informing MacDonald that his appeal had been denied is attached hereto as Exhibit C.

<u>Employees Hired or Rehired After June 1, 2000</u>.") Prior to the voluntary termination of this employment, Bakker had accrued benefits under the Traditional Retirement Program and, when he was rehired, he began accruing benefits under the New Retirement Program. The Plan Administrator provided Bakker with a retirement benefits calculation based on his service under the two different programs. The practical importance of recognizing Bakker's voluntary termination and subsequent rehiring, and consequently the application of the New Retirement Program, is that under the New Retirement Program (unlike the Traditional Retirement Program), the Mirant Plan does *not* provide the Supplement for early retirement benefits. (*Compare* Mirant Plan at Sch. B-8 (providing for the Supplement under the Traditional Retirement Program *with* Mirant Plan at Sch. B-19 to B-22 (no Supplement provided under the New Retirement Program.) Like MacDonald, Bakker did not appeal the Plan Administrator's determination of his retirement benefits through the "binding and conclusive" ERISA mandated appeals process provided by the Plan and the SPD.

      b.  <u>The Union files a grievance on behalf of Bakker</u>.

Also like MacDonald, instead of appealing his retirement calculation in accordance with the binding and conclusive claims review process provided in the Plan Documents, in March or April 2006, the Union filed Grievance No. HYD-01-06 ("Bakker Grievance") alleging that Mirant violated Appendix D of the CBA when it chose not to pay Bakker a Supplement in addition to his early retirement benefit. As discussed above, Appendix D of the CBA summarizes "certain terms" of the Mirant Plan. Appendix D of the CBA summarizes the portion of the Mirant Plan which states that if an employee terminates his or her employment and is later rehired, the employee will be covered by the New Retirement Program. (CBA, Appendix D at p. 41-42.) The CBA further summarizes the Mirant Plan provisions which state that there is no early retirement Supplement under the New Retirement Plan. (CBA, Appendix D at p. 42.)

Although the Plan Documents (and the summary of the Mirant Plan contained in the CBA) clearly do not provide a Supplement for early retirement benefits under the New Retirement Program, the Union nevertheless argued during the grievance process that Bakker should receive the Supplement. The Union's argued that Bakker did not have a break in employment which would cause him to fall under the New Retirement Program for employees hired or rehired after June 1, 2000. The Union made this argument despite the fact that the Mirant Plan clearly states that the Plan Administrator has exclusive authority to make *"final and binding* determinations in connection with any questions of fact which may arise regarding the operation of the Plan" (Plan at 10.3(f), p. 39) and that any action by the Plan Administrator under Section 10.3 "shall be binding and conclusive" (Plan at 10.3, p. 39.)

Mirant and the Union were unable to resolve the Bakker Grievance during the grievance process. Therefore, on February 7, 2007, the Union requested an arbitration to be conducted by the AAA, pursuant to Article 9.1(e) of the CBA. Mirant has at all times maintained that the Bakker Grievance is not arbitrable because a dispute concerning retirement benefits under the Mirant Plan is subject to the mandatory, conclusive, and binding determination of the Plan Administrator and the claims review process as set forth in the Plan Documents. Furthermore, any disputes regarding retirement benefits calculations under the Mirant Plan are outside the scope of the arbitrator's jurisdiction and authority which are expressly limited by the CBA. (CBA, Art. 9.2(b), p. 28.) Mirant has made this objection to arbitrability clear to both the Union and AAA. To date, the Union and AAA have disregarded Mirant's objection to the arbitration of the Bakker Grievance, and AAA has stated that absent an agreement by the parties "or a court order staying this matter," it will continue to process the Union's demand for arbitration.

Because Bakker failed to appeal his retirement benefit calculation as required by the claims review process under the Plan Documents, an appeal was submitted on his behalf by

Mirant, pursuant to the terms of the Plan. The appeal contested the Plan Administrator's determination that Bakker was not eligible to receive the Supplement. This appeal was denied on April 5, 2007. It was determined that Mirant is required by ERISA to provide benefits according to the Mirant Plan and that Bakker's retirement benefit was correctly determined by the Plan Administrator.[7]

Despite Mirant's objection to arbitration of the MacDonald Grievance, the Union continues to seek arbitration of the dispute. Because Bakker's Grievance is not arbitrable, and Mirant would irreparably harmed by being forced to arbitrate a matter which it did not agree to arbitrate under the CBA, the Company filed the present action seeking (1) a declaratory judgment holding that the grievance is not arbitrable, and (2) an injunction to stop the arbitration.

### III.    ARGUMENT AND CITATION TO AUTHORITY

A. Legal Standard for Preliminary Injunction.

"The general standard for issuing a preliminary injunction requires that the movant show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) (citing *International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996)); *Castlewood (US), Inc. v. Nat'l Indemnity Co.*, 2006 WL 3026039, at *4 (S.D.N.Y. Oct. 24, 2006). Courts in the Second Circuit have routinely applied this standard in cases where the preliminary injunction movant seeks to enjoin an arbitration. *See, e.g., Maryland Casualty Co.*, 107 F.3d at 984;

---

[7]    A true and correct copy of the April 5, 2007 letter from Mirant to Bakker informing Bakker that his appeal had been denied is attached hereto as Exhibit D.

*Castlewood (US), Inc.*, 2006 WL 3026039, at *4, 8; *Tellium, Inc. v. Corning, Inc.*, 2004 WL

307238, at *3 (S.D.N.Y. Feb. 13, 2004).

B. Irreparable Harm: Mirant Will Suffer Irreparable Harm if Forced to Arbitrate a Dispute that it Did Not Agree to Arbitrate.

In applying the preliminary injunction standard, the "showing of irreparable harm is the

single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v.*

*United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990); *Castlewood (US) Inc.*, 2005 WL

3026039, at *4. In this case, Mirant must establish that it would suffer irreparable harm if forced

to arbitrate the two disputes regarding calculation of retirement benefits under the Mirant Plan.

One of the fundamental principles arising out of the Steelworker's Trilogy cases is that

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any

dispute which he has not agreed to submit." *United Steelworkers v. Warrior & Gulf Navigation*

*Co.*, 363 U.S. 574, 582 (1960); *see also, Leadertex, Inc. v. Morganton Dyeing & Finishing*

*Corp.*, 67 F.3d 20, 27 (2d Cir. 1995); *Diamond Glass Corp. v. Glass Warehouse Workers and*

*Paint Handlers Local Union 206*, 682 F.2d 301, 303 (2d Cir. 1982) ("there is no general duty to

submit a labor dispute to arbitration"). An arbitrator's authority to settle disputes under a

collective bargaining agreement is contractual in nature, and is limited to the powers that the

agreement confers. *Leed Architectural Prods., Inc. v. United Steelworkers of America*, 916 F.2d

63, 65 (2d Cir. 1990) (citing Torrington Co. v. Metal Prods. Workers Union *Local*, 1645, 362

F.2d 677, 680 & n. 5 (2d Cir.1966); *see also Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601,

605 (2d Cir.1991), *cert. denied*, 504 U.S. 930 (1992) (holding that the question of arbitrability is

controlled by the intent of the parties). The Supreme Court has held that the question of whether

the parties have agreed to arbitrate a certain matter is to be decided by the court, not the

arbitrator. *AT&T Techs. Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)

(reaffirming the principle that the court is to determine whether the company was bound to

11

arbitrate and what issues it must arbitrate, based on the parties contract); *Litton Fin. Printing v. N.L.R.B.*, 501 U.S. 190, 208 (1991) ("Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court...."); *see also Cleveland Wrecking Co. v. Iron Workers Local 40*, 136 F.3d 884, 888 (2d Cir. 1997) (reciting the "well-established principle that the question of arbitrability-whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance-is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.")

Based on these well established principles, courts in the Second Circuit have had no problem determining that a party suffers irreparable harm if forced to arbitrate a dispute it did not agree to arbitrate under either a collective bargaining agreement or some other arbitration agreement. *See, e.g., Maryland Casualty Co. v. Realty Advisory Bd. On Labor Relations*, 107 F.3d 979, 984, 985 (2d Cir. 1997) (holding that employer "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable") (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).[8]

As shown in Section III.C below, the two underlying pension benefits disputes are not arbitrable according to the express terms of the Mirant Plan, which provides the exclusive and

---

[8]       *Merrill Lynch Inv. Mangers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003); *Castlewood (US), Inc.*, 2006 WL 3026039, at *4; *Tellium, Inc. v. Corning, Inc.*, 2004 WL 307328, at *3 (S.D.N.Y. Feb 13, 2004); *Int'l Trust Co. of Berm. V. Fahnstock & Co.*, 1995 WL 606275, at *3 (S.D.N.Y. Oct. 12, 1995) ("A party that has not agreed to arbitrate a dispute will suffer irreparable harm if forced to submit to arbitration"); *Spear, Leeds & Kellogg v. Central Life Assurance Co.*, 879 F. Supp. 403, 404 (S.D.N.Y. 1995), *rev'd on other grounds*, 85 F.3d 21 (2d Cir. 1996) (holding that compelling arbitration of matter not properly subject to arbitration constitutes "*per se* irreparable harm"); *Mt. Ararat Cemetary v. Cemetary Workers. & Green Attendants Union Local 365*, 975 F. Supp. 445 (E.D.N.Y. 1997).

binding claims review process for all benefit determinations made under the Mirant Plan. Moreover, the CBA does not provide for arbitration of the pension benefits disputes either; rather, the CBA merely contains a summary of the Mirant Plan and SPD and, in fact, incorporates by reference the exclusive and binding claims review process set forth in the Plan Documents. Under controlling law, if Mirant was forced to arbitrate these non-arbitrable disputes, the Company would suffer irreparable harm.

C.  Likelihood of Success on the Merits: Mirant is Likely to Succeed on the Merits of this Action Because the Underlying Dispute is Not Arbitrable.

Having established that Mirant would suffer irreparable harm if forced to arbitrate issues which it has not agreed to arbitrate, the second consideration in determining whether a preliminary injunction should be issued is whether Mirant is likely to be successful on the merits of the case. *Maryland Casualty Co.*, 107 F.3d at 984. In other words, Mirant must show that it is likely to be successful regarding its argument that the two pension benefit disputes at issue are not arbitrable under the CBA, pursuant to the final and binding claims review process set forth in the Mirant Plan and SPD.

1.  *The Language of the CBA Establishes that the Retirement Benefit Disputes Are Not Arbitrable and Must be Decided by the Plan Administrator and Reviewed Pursuant to the Plan's Review Procedures.*

An arbitrator may only decide that which the parties have given him or her the authority to decide by the terms of the CBA. *Leed Architectural Prods., Inc.*, 916 F.2d at 65; *Torrington Co.*, 362 F.2d at 680 & n. 5; *Haviland*, 947 F.2d at 605. In this case the CBA states that the "jurisdiction of the arbitrator shall be limited to the contract violation(s) specified in the written grievance. The arbitrator shall not have the right or power to set aside, modify or alter any of the terms of this Agreement." (CBA Art. 9.2, p. 28.) The grievances in this case reference only Appendix D of the CBA as the basis for the arbitrator's authority. However, the clear language of Appendix D shows that it is merely a

summary of certain terms of two pension programs under the MIRANT NEW YORK, INC. BARGAINING UNIT PENSION PLAN (the "Plan") …. This summary is not intended to be a SUMMARY PLAN DESCRIPTION or a PENSION PLAN DOCUMENT as required under the Employee Retirement Income Security Act ("ERISA"). The Summary Plan Description will be provided to employees as required by ERISA. An employee can obtain a copy of the plan documents upon written request from the Company.

(CBA, Appendix D at 39.)

The CBA does not provide any obligation on Mirant regarding the calculation or payment of retirement benefits that is not included in the Plan Documents themselves. In fact, the language of the CBA makes it clear that what is included in the CBA is merely a summary of "certain terms" of the Plan and that the full Plan Documents are controlling and available to the employee at any time. (CBA, Appendix D at 39.) This is a fact that cannot be overlooked because the actual Plan Documents present a comprehensive and complex system by which an employee's retirement benefits are calculated. All of the information needed to determine an employee's retirement benefits is contained in the Plan Documents, and such information cannot be gleaned from the mere "summary of certain terms" provided by the CBA. In other words, an employee's retirement benefit calculation cannot be determined within the four corners of the CBA; rather, such calculation must be determined by looking to the official Plan Documents via the exclusive and binding claims review process contained therein.

> 2.  *The Plan, Which is Incorporated by Reference into the CBA, Establishes that the Dispute is Not Arbitrable.*

The Mirant Plan and SPD, which are incorporated by reference into the CBA, make it clear that the ERISA claims procedures are the exclusive and binding means for deciding disputes over retirement benefits. First, the Mirant Plan states that the Retirement Board is the "Plan Administrator" as that term is defined by ERISA. (Plan at 10.4, p. 39.) The Retirement Board is responsible for the "general administration of the Plan." (Plan 10.1, p. 38.) More specifically, the Plan states that "[t]he Retirement Board …, shall have *exclusive* discretionary

Authority" for, among other things, "construing and interpreting the Plan;" "determining all questions of eligibility;" "making *final and binding* determinations in connection with any questions of fact which may arise regarding operation of the Plan;" and "reviewing denials of claims for benefits as may arise." (Plan at 10.3, pp. 38-39) (emphasis added.) The Mirant Plan further states that "[a]ny action by the Retirement Board under this Section 10.3 shall be *binding and conclusive*." (Plan at 10.3, p. 39) (emphasis added.) Finally, the Mirant Plan contains an express claims review procedure that is consistent with the requirements of ERISA. (Plan at 10.10, p. 41.) Furthermore, SPD which Mirant provides to all employees covered by the Plan, provides a detailed summary of the benefit claims procedures. (SPD at 26-32.) Specifically, the SPD clearly states which forms an employee must fill out and submit for retirement benefit claims and disability benefit claims and how to appeal a benefits determination. (*Id.*) The SPD also describes the employee's right under Section 502(a) of ERISA to bring a civil action if a claim for benefits is denied. (*Id.* at 26.)

Although courts in the Second Circuit have not squarely addressed the issue, other Circuits have routinely held that an ERISA plan's administrative procedures be utilized in lieu of the arbitration process under a CBA where the plan documents are incorporated by reference into the CBA and the plan documents include an exclusive claims review procedure. *See, e.g., USW v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th Cir. 1998). In *Commonwealth Aluminum*, the court was presented with the question of whether grievances relating to the denial of group insurance benefits were arbitrable under a CBA. The CBA incorporated by reference the group insurance benefits plan, including the summary plan description of the group health insurance benefits. The benefits plan provided a claims procedure, including an appeal procedure, for claiming benefits. The plan gave the "plan administrator" "maximum legal discretionary authority" to determine benefits eligibility, decide disputes, and interpret the terms of the plan,

and the plan administrator's decisions were "final and binding." 162 F.3d at 449.   In

determining whether the benefits claim disputes were arbitrable, the Sixth Circuit noted the

presumption in favor of arbitrability, which could be overcome by "an express provision

excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to

exclude the claim from arbitration'." *Id.* at 451.   Turning to the language of the benefits plan as

incorporated into the CBA, the court found that "the inclusion of the claims review procedure

and the language stating that the decisions of the plan administrator are final and binding" were

"express[]" evidence of the parties' "intent not to arbitrate disputes concerning the denial of

medical plan benefits." *Id.*   Thus, the court found that all benefits disputes were excluded from

arbitration because they were within the administrator's authority and, therefore, fell under the

claims review procedure incorporated into the CBA. *Id.* at 451-52.   Emphasizing the parties'

intent to provide an alternate review procedure outside of arbitration, the Sixth Circuit held that

the benefits disputes at issue were not arbitrable. *Id.*

Applying the same analysis, the Seventh Circuit has twice held that disputes regarding

ERISA benefits for union members were excluded from the collective bargaining agreements

due to language evidencing such an intent.   In *Printing Specialties and Paper Productions Union

v. Nabisco Brands, Inc.*, 833 F.2d 102 (7th Cir. 1987), the court, emphasizing factors including

"the independence of the administration of the Pension Plan from the administration of the

collective bargaining agreement" and the "Pension Plan['s inclusion of] its own plan or formula

for determining benefits and administering grievances," found this "forceful evidence clearly

reflects that the disputed Pension Plan benefits were never intended to be arbitratable [sic]

between the parties under the provisions of the collective bargaining agreement." *Id.* at 104, 105

(emphasis added).   Again in 1994, the Seventh Circuit, in *International Association of

Machinists and Aerospace Workers v. Waukesha Engine Division, Dresser Industries, Inc.*, 17

F.3d 196, 198 (7th Cir. 1994), reaffirmed the holding that parties to collective bargaining agreements can indicate their intention to exclude from arbitration ERISA benefits claims by including language in the plan or summary plan description that "expressly provides for an alternative review procedure ... concerning the denial of benefits." Specifically, the plan "vest[ed] authority to determine" medical claims in Aetna (not an arbitrator), and set forth an appeal procedure for reviewing claims that did not involve the CBA's grievance/arbitration procedures. *Id.* The Seventh Circuit had no trouble determining that the dispute was not arbitrable. *Id.* at 199.

Similarly, the Fifth Circuit in *Local Union No. 4-449 v. Amoco Chemical Corp.*, 589 F.2d 162 (5th Cir. 1979), found that the collective bargaining agreement, which incorporated the disability plan as part of its provisions, specifically excluded questions regarding benefits from arbitration because the plan contained a clause reserving the right to "interpret and apply the plan" to the Board of Directors of the company and making the Board's decision final. To hold that disputes regarding benefits were arbitrable, the court noted, would render the section of the plan (incorporated into the CBA) regarding benefits decisions "totally meaningless." *Id.*

Also, in *PDG Chemical, Inc. v. The Oil, Chemical and Atomic Workers Int'l Union*, 164 F. Supp. 2d 856 (E.D. Tex. 2001), the district court was asked to determine whether a dispute over the calculation of benefits under the company's pension plan was arbitrable. Noting first that "[i]f a grievance implicates a benefit plan, the court must also consider the terms of the plan," *id.* at 861, the court outlined the terms of the CBA and the pension plan (which was incorporated into the CBA), including the pension plan's claims procedure. The terms included language indicating that disputes concerning benefits under the plan were the "exclusive responsibility" of the benefits administrative committee, which was empowered to decide

disputes, and that the decisions of the committee would be final and conclusive on all parties. *Id.* at 863-64. The court had no trouble deciding:

> It is clear under the language of the agreement and the plan that the parties intended to have disputes concerning the plan and benefits received under the plan to be decided by the Benefits Administrative Committee. The inclusion of the language in the plan that the company will have exclusive control over the plan and that interpretation of the terms and conditions of the plan will be in the sole discretion of the committee, obviously excludes from arbitration disputes concerning the Savings and Investment Plan.

*Id.* at 864. Thus, the court granted the company's request for a declaration that the grievance as to pension benefits was not arbitrable. *Id.*

The present case is indistinguishable from these authorities, and the result in this case should be the same. Like the various plans in the cases cited above, the Mirant Plan is incorporated by reference into the CBA. (CBA, Appendix D.) Furthermore, the Mirant Plan states that the Plan Administrator (i.e., Retirement Board) has the "exclusive" authority to, among other things, construe and interpret the plan, determine all questions of eligibility, determine all questions concerning the amount of benefits owed, making "final and binding" factual determinations, and review denials of claims for benefits. (Plan at 10.3, pp. 38-39.) Like the plans in the cases above, the Mirant Plan states that "[a]ny action by the Retirement Board under this Section 10.3 shall be *binding and conclusive*." (Plan at 10.3, p. 39) (emphasis added.)

The inclusion of the benefits claims review procedures in the Mirant Plan (and incorporated into the CBA) leads to the inextricable conclusion that the parties clearly intended not to include within the CBA arbitration clause any disputes over benefits provided under the Mirant Plan. The authority for resolving these disputes is delegated exclusively to the Plan Administrator and benefits review committee – not to the Arbitrator through the arbitration process. There is no provision whatsoever in the Plan Documents or the CBA for benefits calculations to be determined through labor arbitration. *Cf. Schweizer Aircraft Corp. v. Local*

*1752*, 29 F.3d 83 (2d Cir. 1994) (where CBA contained an express promise on the part of the company to amend the pension plan, which promise the company breached).[9]

Indeed, had the parties intended benefit claims to be subject to arbitration, the Mirant Plan's claims procedures would have so stated. ERISA expressly requires plans to contain written claims procedures for determining disputes relating to benefits due under a plan. 29 U.S.C. § 1133(1); 29 CFR 2560.503-1(b)(2). These procedures must comply with the detailed statutory and regulatory requirements set forth in 29 U.S.C. § 1133(1) and 29 CFR § 2560.503-1. Here, the Mirant Plan's claim procedures nowhere mention arbitration as a means by which to resolve benefit disputes. Instead, the Mirant Plan expressly adopts the ERISA administrative procedures and provides the exclusive and binding mechanism by which benefit disputes are resolved. In turn the CBA incorporates the Mirant Plan, *including the exclusive and binding claims review process set forth in the Mirant Plan.*

This result is supported by sound policy as well. As noted above, ERISA itself requires there to be administrative claims procedures for determining disputes relating to benefits due under a plan. 29 U.S.C. § 1133; 29 CFR § 2560.503-1. The reason for this requirement is to provide participants with a reliable claims process and the concomitant benefit of having a decision-maker with expertise in benefits issues responsible for determining the application of plan terms to individual circumstances. The virtue of this policy is completely undermined when

---

[9]      *Schweizer* is clearly inapposite to the present case. In *Schweizer* a company unsuccessfully sought to stay an arbitration initiated by a union employee who was disputing the calculation of her pension benefits provided by the company's pension plan. However, in that case, unlike the present case, the CBA did not simply incorporate and summarize the terms of the pension plan. Rather, in *Schweizer*, the CBA imposed independent obligations on the company that were *not* included in the pension plan. Moreover, there was no evidence that the pension plan contained an exclusive and binding claims review process. In the present case, it is undisputed that the CBA merely summarizes the Mirant Plan and does not impose any independent obligations on Mirant, and, furthermore, the Mirant Plan contains an exclusive and binding claims review process.

a participant attempts to bypass the claims process in favor of an arbitration forum lacking the daily application of benefits expertise to claims.

In fact, to allow employees to bypass the mandatory ERISA claims procedure effectively gives them two bites at the apple. If the employee does not like the result of the Mirant Plan's claims procedure, they could elect to go through labor arbitration to see if they could fair better and vice versa. The result is that arbitration simply becomes a forum for employees to see if they can get a better result than they would have gotten under the Mirant Plan's claims process. This sort of forum shopping by employees is inconsistent with the purpose of ERISA's mandatory claims procedure and illustrates why courts have consistently found disputes like the one in this case not arbitrable.

## IV.    CONCLUSION

Based on the foregoing and on the allegations alleged in the Complaint, Mirant respectfully requests that the Court grant the following relief:

(1)    an Order granting preliminary and permanent injunctive relief preventing the Defendant from pursuing any further arbitral proceedings with respect to the MacDonald and Bakker Grievances;

(2)    an Order declaring that Plaintiff has no obligation to participate in any of the grievance and arbitration procedures contained in Article 9 of the CBA for any disputes regarding retirement benefits determinations made under the Mirant Plan;

(3)    an Order permanently enjoining Defendant from filing or pursuing to arbitration any grievances challenging retirement benefit determinations made under the Mirant Plan;

(4)    award of costs and attorneys fees to Plaintiff; and

(5)    any other such relief as the Court finds appropriate.

Respectfully submitted this 1st of June, 2007.

/s/Piret Loone
Piret Loone (PL 6597)
ALSTON & BIRD, LLP

90 Park Avenue
New York, NY 10016-1387
Telephone: 212-210-9400

*Counsel for Plaintiff Mirant New York, Inc.*

Of Counsel:
Forrest W. Hunter
ALSTON & BIRD, LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000