**EXHIBIT 1**

**MIRANT SERVICES
PENSION PLAN FOR
BARGAINING UNIT EMPLOYEES**

**EFFECTIVE AS OF APRIL 16, 2001**

0343307 - BU restated

**MIRANT SERVICES**
**PENSION PLAN FOR**
**BARGAINING UNIT EMPLOYEES**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................1

ARTICLE I - DEFINITIONS ............................................................................................1

ARTICLE II - ELIGIBILITY ...........................................................................................9
    2.1 Employees ...........................................................................................................9
    2.2 Employees Represented by a Collective Bargaining Agent ...............................9
    2.3 Persons in Military Service and Employees on Authorized Leave of Absence ...9
    2.4 Employees Reemployed ......................................................................................9
    2.5 Participation upon Return to Eligible Class ......................................................10
    2.6 Exclusion of Certain Categories of Employees ................................................10
    2.7 Waiver of Participation .....................................................................................10
    2.8 Employees Transferred out of Bargaining Unit ...............................................10

ARTICLE III - RETIREMENT .......................................................................................11
    3.1 Retirement at Normal Retirement Date ............................................................11
    3.2 Retirement at Early Retirement Date ...............................................................11
    3.3 Retirement at Deferred Retirement Date ..........................................................11

ARTICLE IV - DETERMINATION OF ACCREDITED SERVICE .........................12
    4.1 Accredited Service ............................................................................................12
    4.2 Accrual of Retirement Income during Period of Total Disability ....................13
    4.3 Employees Leaving Employer's Service ..........................................................13

ARTICLE V - RETIREMENT INCOME .......................................................................15
    5.1 Benefit at Retirement ........................................................................................15
    5.2 Early Retirement Income ..................................................................................15
    5.3 Deferred Retirement Income ............................................................................16
    5.4 Payment of Retirement Income ........................................................................16
    5.5 Termination of Retirement Income ...................................................................16
    5.6 Required Distributions ......................................................................................17
    5.7 Suspension of Retirement Income for Reemployment .....................................19
    5.8 Service in the Armed Forces ............................................................................19

ARTICLE VI - LIMITATIONS ON BENEFITS ..........................................................20
    6.1 Maximum Retirement Income ..........................................................................20
    6.2 Adjustment to Defined Benefit Dollar Limitation for Early or Deferred Retirement ..........21

6.3 Adjustment of Limitation for Years of Service or Participation ..........................................21
6.4 Conversion of Retirement Benefit to a Single Life Annuity..............................................22
6.5 Limitations on Benefits from Multiple Plans..................................................................22
6.6 Incorporation of Code Section 415 .................................................................................23

**ARTICLE VII - PROVISIONAL PAYEE** ..................................................................................24
7.1 Adjustment of Retirement Income to Provide for Payment to Provisional Payee..............24
7.2 Form and Time of Election and Notice Requirements........................................................25
7.3 Circumstances in Which Election and Designation are Inoperative ....................................26
7.4 Pre-Retirement Death Benefit ..........................................................................................26
7.5 Post-Retirement Death Benefit – Qualified Joint and Survivor Annuity.............................27
7.6 Election and Designation by Former Employee.................................................................27
7.7 Death Benefit for Provisional Payee of Former Employee ...............................................30
7.8 Limitations on Employee's and Provisional Payee's Benefits ...........................................31
7.9 Level Income Option.......................................................................................................31
7.10 Effect of Election under Article VII ...............................................................................31
7.11 Cash-Out ......................................................................................................................31

**ARTICLE VIII - TERMINATION OF SERVICE**........................................................................32
8.1 Vested Interest ...............................................................................................................32
8.2 Early Distribution of Vested Benefit................................................................................32
8.3 Years of Service of Reemployed Employees....................................................................32
8.4 Cash-Out and Buy-Back .................................................................................................33
8.5 Calculation of Present Value ...........................................................................................34
8.6 Requirement for Direct Rollovers ...................................................................................34

**ARTICLE IX - CONTRIBUTIONS**..........................................................................................36
9.1 Contributions Generally..................................................................................................36
9.2 Return of Employing Company Contributions .................................................................36
9.3 Expenses ........................................................................................................................37
9.4 Forfeitures .....................................................................................................................37

**ARTICLE X - ADMINISTRATION OF PLAN** ..........................................................................38
10.1 Retirement Board ..........................................................................................................38
10.2 Organization and Transaction of Business of Retirement Board ......................................38
10.3 Administrative Responsibilities of Retirement Board .....................................................38
10.4 The "Administrator".......................................................................................................39
10.5 Fiduciary Responsibilities.............................................................................................39
10.6 Employment of Actuaries and Others.............................................................................40
10.7 Accounts and Tables .....................................................................................................40
10.8 Indemnity of Retirement Board .....................................................................................40
10.9 No Control of Assets......................................................................................................41
10.10 Claims Procedures.......................................................................................................41

**ARTICLE XI - MANAGEMENT OF TRUST** ............................................................................42
11.1 Trust.............................................................................................................................42
11.2 Disbursement of the Trust Fund ....................................................................................42
11.3 Rights in the Trust.........................................................................................................42
11.4 Merger of the Plan.........................................................................................................42

**ARTICLE XII - TERMINATION OF THE PLAN** ...................................................43
    12.1 Termination of the Plan .................................................................................43
    12.2 Limitation on Benefits for Certain Highly Paid Employees ...............................43

**ARTICLE XIII - AMENDMENT OF THE PLAN** ...................................................45
    13.1 Amendment of the Plan .................................................................................45

**ARTICLE XIV - SPECIAL PROVISIONS** .............................................................46
    14.1 Exclusive Benefit .............................................................................................46
    14.2 Assignment or Alienation ...............................................................................46
    14.3 Voluntary Undertaking ....................................................................................47

APPENDIX A - EMPLOYING COMPANIES ................................................................1

SCHEDULE A -  EMPLOYEES LOCATED AT MIRANT NEW ENGLAND ...............................1

SCHEDULE B - EMPLOYEES LOCATED AT MIRANT NEW YORK ...........................................1

SCHEDULE C - EMPLOYEES LOCATED AT MIRANT MID-ATLANTIC ...................................1

SCHEDULE D - EMPLOYEES LOCATED AT MIRANT CALIFORNIA ......................................1

# INTRODUCTION

The Mirant Services Pension Plan for Bargaining Unit Employees (the "Plan"), originally effective January 1, 1999 is herein amended and restated, effective as of April 16, 2001 (unless otherwise specified herein or required by law) to incorporate changes to the Plan made through a series of amendments since the Plan was adopted and to make certain other changes desired by the Employer.

All contributions made by the Employing Companies to this Plan are expressly conditioned upon the continued qualification of the Plan under Section 401(a) of the Code, including any amendments to the Plan, and upon the deductibility of such contributions by the Employing Companies pursuant to Section 404 of the Code.

To the extent that different terms and conditions are necessary to reflect the benefits to be provided to each Eligible Employee, such terms and conditions shall be set forth in a schedule attached hereto and incorporated into the Plan and shall supersede any inconsistent provisions otherwise set forth herein. Any such schedule shall reflect the collective bargaining unit to which it applies, the effective date and the Plan Section or Sections to which it applies. Any amendment to such schedule shall be considered an amendment to the Plan and shall be subject to Section 13.1 hereof.

# ARTICLE I
# DEFINITIONS

The following terms as used herein have the following meanings unless a different meaning is plainly required by the context. In the Plan and Trust Agreement, where the context requires, words in the masculine gender include the feminine and neuter genders and words in the singular include the plural and words in the plural include the singular.

1.1    "**Accrued Retirement Income**" means with respect to any Employee at any particular date, the Retirement Income, determined pursuant to Section 5.1, commencing on his Normal Retirement Date which would be payable to such Employee in the form of a single life annuity on the basis of his Accredited Service to the date as of which the computation of Retirement Income is made.

1.2    "**Accredited Service**" means with respect to any Employee included in the Plan, the period of service as provided in Article IV.

1.3    "**Actuarial Equivalent**" means a benefit of equivalent value when computed on the basis of five percent (5%) interest per annum, compounded annually and the 1951 Group Annuity Mortality Table for males. The ages for all Employees under the above table shall be set back six (6) years and the ages for such Employees' spouses shall be set back one year. All actuarial adjustments and actuarial determinations required and made under the terms of the Plan shall be calculated in accordance with such assumptions. Notwithstanding the above, for purposes of determining the equivalent value of a benefit which is subject to Code Section 417(e)(3) and Treas. Reg. § 1.417(e)-1(d), "Actuarial Equivalent" means a benefit of equivalent value when computed on

the basis of the annual rate of interest on 30-year Treasury securities for the month of August in the Plan Year which precedes the Plan Year in which such present value is determined ("Applicable Interest Rate") and using the prevailing commissioners' standard table used to determine reserves for group annuity contracts in effect on the date as of which the present value is being determined ("Applicable Mortality Table").

1.4    "**Affiliated Employer**" means an Employing Company and any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes such Employing Company; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with such Employing Company; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes such Employing Company; and any other entity required to be aggregated with such Employing Company pursuant to regulations under Section 414(o) of the Code.

1.5    "**Average Monthly Earnings**" means the greater of:   (a) an Employee's Monthly Earnings averaged over the five (5) highest Plan Years of participation which shall produce the highest monthly average within the last ten (10) Plan Years; or (b) an Employee's Monthly Earnings averaged over the five (5) highest Plan Years of participation which shall produce the highest monthly average within the last ten (10) Plan Years during which the Employee actively performed services for an Employing Company.  If an Employee has completed less than five (5) Plan Years of participation upon his termination of employment, his Average Monthly Earnings will be based on his Earnings during his participation to his date of termination.

1.6    "**Board of Managers**" means the Board of Managers of Mirant Services, L.L.C.

1.7    "**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

1.8    "**Deferred Retirement Date**" means the first day of the month after a retirement subsequent to the Normal Retirement Date.  Reemployment following Normal Retirement Date shall be deemed to be a retirement if an Employee has less than forty (40) Hours of Service during a calendar month.

1.9    "**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

1.10    "**Early Retirement Date**" means the first day of the month following the retirement of an Employee on or after his fiftieth (50th) birthday and before his sixty-fifth (65th) birthday.

1.11    "Earnings"

(a)    For any Employee, including any Employee whose service is terminated by reason of disability (as defined in Section 4.2), means: (1) (A) the highest annual rate of salary or wages of an Employee of any Affiliated Employer within any Plan Year before deductions for taxes, Social Security, etc.; or (B) for Employees paid at an hourly or weekly rate of pay, the annualized result of the highest rate of pay for any week within a Plan year before deductions for taxes, Social Security, etc.; (2) all elective contributions that are made by an Employing Company on behalf of an Employee that are not includible in gross income under Section 125, Section 402(e)(3), Section 402(h) and Section 403(b) of the Code, and, effective for Plan Years beginning on or after January 1, 2001, any elective amounts not included in the gross income of an Employee by reason of Section 132(f)(4) of the Code; and (3) excluding all amounts deferred under any non-qualified deferred compensation plan maintained by an Employing Company.

(b)    Notwithstanding the above, "Earnings" for any Employee who is a regular part-time employee means with regard to paragraph (a)(1) above the highest annual rate of salary or wages based on a forty (40) hour work week.

(c)    With respect to an Employee whose service terminates because of a disability under Section 4.2, Earnings shall be deemed to continue in effect throughout the period of the Employee's Disability Leave, as defined in Section 4.2.

(d)    For an Employee on approved leave of absence to serve in the Armed Forces of the United States, Earnings shall be determined for the recognized period of his absence at the rate which is paid to him on the day he returns to the service of an Affiliated Employer or at the rate which was payable to him at the time he left the employment of an Employing Company to enter the Armed Forces of the United States, if such amount was greater.

(e)    The annual compensation of each Employee taken into account under the Plan shall not exceed $160,000, as adjusted for increases in the cost of living in accordance with Code Section 401(a)(17). The cost of living adjustment in effect for a calendar year applies to any period, not exceeding twelve (12) months, over which compensation is determined (the "determination period") beginning in such calendar year. If the determination period is less than twelve (12) months, the limit shall be prorated. If compensation for any prior determination period is taken into account in determining an Employee's benefits accruing in the current Plan Year, the compensation for that prior determination period is subject to the compensation limit in effect for that prior determination period.

1.12    "**Effective Date**" means January 1, 1999.

1.13    "**Eligibility Year of Service**" is a Year of Service commencing on the Employee's date of employment or reemployment or anniversary date thereof.

1.14    "**Employee**" means any person who is currently employed by an Employing Company as (a) a regular full-time employee, (b) a regular part-time employee, (c) a cooperative

education employee, or (d) a temporary employee (whether full-time or part-time) paid directly or indirectly by an Employing Company. The term also includes "leased employees" within the meaning of Section 414(n)(2) of the Code, unless the total number of leased employees constitutes less than twenty percent (20%) of the Employing Company's non-highly compensated workforce within the meaning of Section 414(n)(5)(C)(ii) and such leased employees are covered by a plan described in Section 414(n)(5)(B) of the Code. Notwithstanding the preceding, "Employee" shall not mean any person who is classified by an Employing Company as an independent contractor regardless of whether such classification is determined to be in error.

1.15    **"Employer"** means Mirant Services, LLC, and its predecessors or successors.

1.16    **"Employing Company"** means the Employer and any affiliate or subsidiary which the Board of Managers may from time to time, and upon such terms and conditions as may be fixed by the Board of Managers, determine to bring under the Plan, and any successor to them. The Employing Companies are set forth on Appendix A to the Plan as updated from time to time. No entity shall be treated as an Employing Company prior to the date it adopts the Plan.

1.17    **"Hour of Service"** means each hour for which an Employee (a) is paid, or entitled to payment, for the performance of duties for an Affiliated Employer, and such hours shall be credited to the Employee for the computation period or periods in which the duties are performed; (b) is paid, or entitled to payment, by an Affiliated Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence in which case the Employee shall be credited with Hours of Service for the computation period or periods in which the period during which no duties were performed occurs; (c) is awarded back pay, irrespective of mitigation of damages, in which case the Employee shall be credited with Hours of Service for the computation period or periods to which the award or agreement pertains, rather than the computation period in which the award, agreement, or payment is made; and (d) solely for the purpose of calculating Vesting Years of Service, was on any form of authorized leave of absence. The same Hours of Service shall not be credited under clauses (a), (b), (c), and (d).

An Employee who is entitled to be credited with Hours of Service in accordance with clause (b) or (d) of this Section shall be credited with such number of Hours of Service for the period of time during which no duties were performed as though he were in the active employment of an Employing Company during such period of time. However, an Employee shall not be credited with Hours of Service in accordance with clause (b) of this Section for unused vacation for which payment is received at termination of employment, or if the payment which is made to him or to which he is entitled in accordance with clause (b) is made or due under a plan maintained solely for the purpose of complying with applicable Worker's Compensation, or unemployment compensation or disability insurance laws, or if such payment is one which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

Provided there is no duplication of Hours of Service credited in accordance with the foregoing provisions, if an Employee is on an approved leave of absence to serve in the Armed

Forces of the United States, he shall be credited with such number of Hours of Service with respect to all or such portion of the period of his absence to serve in the Armed Forces of the United States as may be recognized under Sections 1.35(b), 2.3, and 4.1(a).

The rules set forth in paragraphs (b) and (c) of Department of Labor Regulations 2530.200b-2 are incorporated in the Plan by this reference and made a part hereof.

1.18   **"Limitation Year"** means the Plan Year.

1.19   **"Monthly Earnings"** means one-twelfth (1/12) of the Earnings of an Employee of an Affiliated Employer during a Plan Year.

1.20   **"Normal Retirement Date"** means the first day of the month following an Employee's sixty-fifth (65th) birthday, except that the Normal Retirement Date of any Employee hired on or after his sixtieth (60th) birthday shall be the fifth (5th) anniversary of his initial participation in the Plan.

1.21   **"One-Year Break in Service"** means a twelve (12) consecutive month period which would constitute a Year of Service but for the fact that the Employee has not completed more than 500 Hours of Service during such period.

Solely for the purpose of determining whether a One-Year Break in Service has occurred for eligibility or vesting purposes, an Employee who is absent from work for maternity or paternity reasons shall receive credit for the Hours of Service which would otherwise have been credited to such Employee but for such absence, or in any case in which such hours cannot be determined, eight (8) Hours of Service per day of such absence. In no event shall Hours of Service credited under this paragraph be in excess of the amount necessary to prevent a One-Year Break in Service from occurring. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (a) by reason of the pregnancy of the Employee, (b) by reason of a birth of a child of the Employee, (c) by reason of the placement of a child with the Employee in connection with the adoption of such child by such Employee, or (d) for purposes of caring for such child for a period beginning immediately following such birth or placement. The Hours of Service shall be credited under this paragraph: (a) in the vesting or eligibility period in which the absence begins if the Hours of Service credited are necessary to prevent a One-Year Break in Service in such period, and (b) in all other cases, in the vesting or eligibility period following the period in which the absence begins.

1.22   **"Plan"** means Mirant Services Pension Plan for Bargaining Unit Employees, as set forth herein and as hereinafter amended, effective January 1, 1999.

1.23   **"Plan Year"** means the twelve (12) month period commencing on the first day of January and ending on the last day of December next following.

1.24   **"Plan Year of Service"** is a Year of Service determined as if the date of employment or reemployment is the first day of the Plan Year.

1.25    "**Provisional Payee**" means a spouse designated or deemed to have been designated by an Employee or former Employee pursuant to Article VII to receive Retirement Income on the death of the Employee or former Employee.

1.26    "**Qualified Election**" means an election by an Employee or former Employee on a prescribed form that concerns the form of distribution of Retirement Income that must be in writing and must be consented to by the Employee's spouse.  The spouse's consent to such an election must acknowledge the effect of such election, must be in writing, and must be witnessed by a notary public.  Notwithstanding this consent requirement, if the Employee establishes to the satisfaction of the Retirement Board (or its delegee) that such written consent may not be obtained because the spouse cannot be located or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe, an election by the Employee will be deemed a Qualified Election.  Any consent necessary under this provision shall be valid and effective only with respect to the spouse who signs the consent, or in the event of a deemed Qualified Election, with respect to such spouse.

A revocation of a prior Qualified Election may be made by the Employee without consent at any time commencing within ninety (90) days before such Employee's fiftieth (50th) birthday but not later than before the commencement of Retirement Income.

1.27    "**Retirement Board**" means the managing board of the Plan provided for in Article X.

1.28    "**Retirement Date**" means the Employee's Early, Normal, or Deferred Retirement Date, whichever is applicable to him.

1.29    "**Retirement Income**" means the monthly amount of retirement income provided for by the Plan for an Employee.

1.30    "**Social Security Benefit**" shall be based on the salary history of the Employee as provided below:

(a)    The salary history shall be estimated by applying a salary scale, projected backwards, to the Employee's compensation for W-2 purposes from the Affiliated Employer which last employed the Employee for the first Plan Year following the most recent Plan Year for which the salary history is estimated.  The salary scale shall be a level percentage per year equal to six percent (6%) per annum.

(b)    The Plan shall give clear written notice to each Employee of the Employee's right to supply the actual salary history and of the financial consequences of failing to supply such history.  Such notice shall state that the actual salary history is available from the Social Security Administration.

(c)    Notwithstanding the preceding, with respect to an Alternate Payee, the Social Security benefit shall be determined by using the Alternate Payee's actual Social Security Salary history and estimated age 65 Social Security benefit provided that the Alternate Payee secures this information for the Retirement Board.

1.31    **"Social Security Retirement Age"** means age sixty-five (65) if the Employee attains age sixty-two (62) before January 1, 2000, age sixty-six (66) if the Employee attains age sixty-two (62) after December 31, 1999, but before January 1, 2017, and age sixty-seven (67) if the Employee attains age sixty-two (62) after December 31, 2016.

1.32    **"Trust"** or **"Trust Fund"** means all such money or other property which shall be held by the Trustee pursuant to the terms of the Trust Agreement or pursuant to contracts with life insurance companies.

1.33    **"Trust Agreement"** means the Trust agreement or agreements between the Employer and the Trustee established for the purpose of funding the Retirement Income to be paid.

1.34    **"Trustee"** means the trustee or trustees acting as such under the Trust Agreement, including any successor or successors.

1.35    **"Vesting Year of Service"** means an Employee's Years of Service including: (a) Years of Service with an Affiliated Employer; (b) active service with the Armed Forces of the United States as set forth in Section 5.8 of the Plan; and (c) any period during which the Employee was on any other form of authorized leave of absence. For purposes of this Section in determining Vesting Years of Service with respect to a period of absence referred to in clause (b) or (c) of this Section, an Employee shall be credited with Hours of Service as though the period of absence were a period of active employment with the Affiliated Employer.

1.36    **"Year of Service"** means with respect to an Employee in the service of an Affiliated Employer:

(a)    a twelve (12) consecutive month period commencing on the Employee's most recent date of hire by the Affiliated Employer (or date of reemployment as provided in Section 2.4) and any subsequent twelve (12) consecutive month period commencing on an anniversary date of such date of hire, provided he has completed at least 1000 Hours of Service during each such twelve (12) consecutive month period; and

(b)    to the extent not resulting in duplication, each Year of Service restored to the Employee upon reemployment as provided in Section 8.3.

An Employee's vested interest in his Accrued Retirement Income shall be based on his Vesting Years of Service and an Employee's eligibility to participate in the Plan pursuant to Article II shall be based on his Eligibility Year of Service. Breaks in service will be measured on the same computation period as the Year of Service.

8

## ARTICLE II
## ELIGIBILITY

2.1    **Employees**.  Each Employee described in Section 2.2, except as otherwise provided in this Article II, shall be included in the Plan on the later of (a) January 1, 1999 or (b) the first day of the month next following the date on which he first completes an Eligibility Year of Service.

2.2    **Employees Represented by a Collective Bargaining Agent**.  Only an Employee who is represented by a collective bargaining agent may participate in the Plan, subject to its terms, if the representative(s) of his bargaining unit and an Employing Company mutually agree to participation in the Plan by members of his bargaining unit.

2.3    **Persons in Military Service and Employees on Authorized Leave of Absence**.

(a)    Any person not already included in the Plan who leaves or has left the employ of an Employing Company to enter the Armed Forces of the United States or is on authorized leave of absence without regular pay and who returns to the employ of an Affiliated Employer within ninety (90) days after discharge from such military service or on or before termination of his leave of absence, shall, upon return, be included in the Plan effective as of the first day of the month next following the date on which he first met or meets the eligibility requirement of Section 2.1.

(b)    In determining whether an Employee entering the service of an Affiliated Employer has completed an Eligibility Year of Service, his Hours of Service prior to such authorized leave of absence without regular pay or entry into the Armed Forces shall be taken into account, and for purposes of Section 2.4, he shall be deemed not to have incurred a One-Year Break in Service by reason of such absence.

(c)    If an Employee dies while in active service with the Armed Forces of the United States, such Employee shall be deemed to have returned to the employ of an Employing Company on his date of death.

(d)    An Employee not already included in the Plan who is on authorized leave of absence and receiving his regular pay shall be considered credited with Hours of Service as though the period of absence was a period of active employment with an Employing Company, and he shall be included in the Plan if and when he meets the requirements of this Article II regardless of whether he is, on the date of such inclusion, on such leave of absence.

2.4    **Employees Reemployed**.  An Employee whose service terminates at any time and who is reemployed as an Employee, unless excluded under Section 2.6, will be included in the Plan as provided in Section 2.1 unless:

(a)    prior to termination of his service he had completed at least one Year of Service; and

(b)    upon his reemployment, to the extent provided in Section 8.3 without regard to Section 8.4, he is entitled to restoration of his Years of Service.

An Employee who satisfies 2.4(a) and (b) will be included in the Plan as of the date of his reemployment.  For purposes of determining Years of Service of an Employee who is reemployed by an Affiliated Employer subsequent to a One-Year Break in Service, a Year of Service subsequent to his reemployment shall be computed on the basis of the twelve (12) consecutive month period commencing on his date of reemployment or an anniversary thereof.

2.5    **Participation upon Return to Eligible Class**.  If an Employee ceases to be a member of an eligible class of Employees and becomes ineligible to participate, but has not incurred a One-Year Break in Service, such Employee will participate immediately upon returning to an eligible class of Employees.  If such Employee incurred a One-Year Break in Service, eligibility will be determined under Section 2.4 of the Plan.

In all other instances, if an Employee is not a member of an eligible class of Employees but then becomes a member of an eligible class, such Employee will commence participation in the Plan as of the first day of the month next following the later of (a) the date such Employee completes an Eligibility Year of Service or (b) the date he becomes a member of an eligible class of Employees.

2.6    **Exclusion of Certain Categories of Employees**.  Notwithstanding any other provision of this Article II, individuals classified in the sole discretion of the Employing Company, as leased employees or as a temporary employee shall not be eligible to participate in the Plan.

2.7    **Waiver of Participation**.  Notwithstanding the above, an Employee may elect voluntarily not to participate in the Plan.  The election not to participate must be communicated in writing to and acknowledged by the Retirement Board (or its delegee) and shall be effective as of the date set forth in such written waiver.

2.8    **Employees Transferred out of Bargaining Unit**.    An Employee who is participating in the Plan, is transferred to an Affiliated Employer and is no longer represented by a collective bargaining agent shall continue to accrue Retirement Income only to the extent his Average Monthly Earnings (or such other definition of earnings applicable to the Employee at the time of his transfer pursuant to a Schedule attached to the Plan) increase in the future.

## ARTICLE III
## RETIREMENT

**3.1    Retirement at Normal Retirement Date.**  Each Employee eligible to participate in the Plan shall have a nonforfeitable right to his Accrued Retirement Income upon reaching his Normal Retirement Date.

**3.2    Retirement at Early Retirement Date.**  An Employee having at least ten (10) Years of Accredited Service may elect to retire on an Early Retirement Date and to have his Retirement Income commence on the first day of any month up to and including the Employee's Normal Retirement Date.

**3.3    Retirement at Deferred Retirement Date.**  An Employee included in the Plan may remain in active service after his Normal Retirement Date and elect to retire on a Deferred Retirement Date and have his Retirement Income commence on the first day of any month after his Normal Retirement Date.  The involuntary retirement of an Employee on or after his Normal Retirement Date shall not be permitted solely on the basis of the Employee's age, except in accordance with the provisions of the Age Discrimination in Employment Act, as amended from time to time.  Termination of service of such an Employee for any reason after Normal Retirement Date shall be deemed retirement as provided in the Plan.

# ARTICLE IV
## DETERMINATION OF ACCREDITED SERVICE

4.1    **Accredited Service**.

(a)    Each Employee meeting the requirements of Article II shall be credited with Accredited Service as set forth in (b) below. Any such Employee who is on authorized leave of absence with regular pay shall be credited with Accredited Service during the period of such absence. Any such Employee who is on an approved leave of absence to serve in the Armed Forces of the United States shall, subject to Sections 5.8(b) and 2.3, be credited with Accredited Service during all or such portion of the period of his absence. Employees on authorized leave of absence without regular pay, other than Employees deemed to accrue Accredited Service under Section 4.2 and Employees described in the preceding sentence, shall not be credited with Accredited Service for the period of such absence.

(b)    An Employee included in the Plan who is credited with a Plan Year of Service shall be credited with Accredited Service as follows:

(1)    if an Employee completes at least 1,680 Hours of Service in a Plan Year, he shall be credited with one year of Accredited Service;

(2)    if an Employee completes less than 1,680 Hours of Service in a Plan Year, but not less than 1,000 Hours of Service, he shall be credited with one-twelfth (1/12) of a year of Accredited Service for each 140 Hours of Service; or

(3)    if an Employee's initial eligibility in the Plan shall occur after the beginning of the Plan Year, and the Employee shall therefore have completed 1,000 Hours of Service in such Plan Year, he shall be credited with one-twelfth (1/12) of a year of Accredited Service for each 140 Hours of Service during such Plan Year after his inclusion in the Plan.

(c)    An Employee (1) who has previously satisfied the eligibility requirements under Article II shall again be included in the Plan at such time which is after the beginning of the Plan Year, or (2) who terminates his employment or otherwise ceases to be eligible for any reason before the close of such Plan Year and shall therefore have completed less than 1,000 Hours of Service in such Plan Year, he shall be credited with one-twelfth (1/12) of a year of Accredited Service for each 140 Hours of Service during such Plan Year after his inclusion in the Plan or before his termination of employment or loss of eligibility in such Plan Year, as the case may be.

(d)    In addition to the foregoing, Accredited Service may include Accredited Service accrued subsequent to a One-Year Break in Service including such Accredited Service which may be restored in accordance with the provisions of Section 8.3.

4.2    **Accrual of Retirement Income during Period of Total Disability.**

(a)    An Employee in the Plan is considered on a leave of absence if after completing at least five (5) Vesting Years of Service he becomes totally disabled and is granted either Social Security disability benefits or long-term disability benefits under a long-term disability benefit plan of an Employing Company ("Disability Leave"). An Employee's Disability Leave is deemed to begin on the initial date of the disability and continues until the earlier of: (1) the end of the month in which he ceases to be entitled to receive Social Security Disability benefits and long-term disability benefits under the Employer's long-term disability benefit plan; (2) his death; or (3) his Retirement Date if he elects to have his Retirement Income commence on such date. During the period of the Employee's Disability Leave, he shall, for purposes of the Plan, be deemed to have received Earnings at the regular rate in effect for him.

(b)    A disabled Employee that applies for and would be granted long-term disability benefits under a long-term disability benefit plan of an Employing Company, if it were not for the fact that the deductions therefrom attributable to other disability benefits equal or exceed the amount of his unreduced benefit a long-term disability benefit plan of an Employing Company, will be considered as being currently granted benefits under such long-term disability benefit plan.

(c)    An Employee's Disability Leave shall be deemed to be a period for which Hours of Service shall be credited to the Employee as though the period of his Disability Leave were a period of active employment.

(d)    If an Employee's Disability Leave terminates prior to his Normal Retirement Date and he fails to return to employment with the Employing Company within sixty (60) days thereof, his employment will be deemed to terminate upon such date and his rights will be determined under Article VIII, unless at such time he was entitled to retire on an Early Retirement Date, in which event his termination of employment will be deemed to constitute his retirement under Section 3.2.

(e)    Notwithstanding any provision of this Section, any Employee who is covered by a collective bargaining agreement where such unit and an Employing Company have mutually agreed to this provision shall be ineligible for a Disability Leave under this section or such Employee's Disability Leave shall terminate if the Employee has already become eligible if such Employee accepts a benefit under an Employing Company's "career transition plan" or such other severance plan or agreement where such other plan or agreement stipulates that the Employee is ineligible or ceases to be on Disability Leave under this Plan.

4.3    **Employees Leaving Employer's Service.**    If the service of an Employee is terminated prior to retirement as provided by Article III, the Employee will forfeit any Vesting Years of Service and Accredited Service that he may have, subject to the restoration of Vesting Years of Service and Accredited Service rules set forth in Article VIII. This Section shall not affect the rights, if any, of an Employee under Article VIII, nor shall the rights of an Employee be affected by reason of a layoff, due to lack of work, that continues for a period of one year or less, except that such period of layoff shall not be deemed to be service with an Employing Company.

If the service of an Employee is terminated, or if he is not reemployed before the expiration of one year after being laid off for lack of work, and he is subsequently reemployed, he will be treated as provided in Section 3.2.

## ARTICLE V
## RETIREMENT INCOME

5.1    **Benefit at Retirement.** Subject to the limitations in Article VI, the monthly Retirement Income payable as a single life annuity to an Employee (or his Provisional Payee) included in the Plan who retires from the service of an Employing Company shall be determined as follows:

(a)    Upon retirement at Normal Retirement Date, his Retirement Income (before adjustment for a Provisional Payee designation, if any) shall be based on an amount equal to 1.0% of his Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service to his Normal Retirement Date or Deferred Retirement Date.

(b)    Upon retirement at Early Retirement Date, his Retirement Income (before adjustment for Provisional Payee designation, if any) shall be based on an amount equal to 1.0% of his Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service earned as of his Early Retirement Date.

(c)    Upon termination of service by reason of the death of the Employee prior to retirement and after the effective date of his Provisional Payee designation or deemed designation, the Retirement Income shall be based on an amount equal to 1.0% of the Employee's Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service earned to the date of his death.

(d)    For an Employee entitled to receive Retirement Income prior to his Normal Retirement Date under Section 8.1 that terminates service with an Employing Company, his Retirement Income (before adjustment for Provisional Payee designation, if any) shall be based on an amount equal to 1.0% of his Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service to his date of termination.

(e)    For an Employee terminating service because of a disability (as defined in Section 4.2) prior to Retirement Date, provided such Employee does not return to the service of an Employing Company prior to his Retirement Date, his Retirement Income shall be an amount equal to 1.0% of the Employee's Average Monthly Earnings multiplied by his years (and fraction of a year) of Accredited Service to his Retirement Date.

5.2    **Early Retirement Income.** The monthly amount of Retirement Income payable to an Employee who retires from the service of an Employing Company at his Early Retirement Date subject to the limitations of Section 6.2, will be equal to his Retirement Income determined in accordance with Sections 5.1(b) based on his Accredited Service to his Early Retirement Date, reduced by five-tenths of one percent (0.5%) for each calendar month by which the commencement date of his Retirement Income precedes his Normal Retirement Date but follows the first day of the month following his attainment of his fifty-fifth (55th) birthday and reduced

one-third of one-percent (0.333%) for each calendar month by which the commencement date precedes the first day of the month following his attainment of his fifty-fifth (55th) birthday.

5.3    **Deferred Retirement Income**.    The monthly amount of Retirement Income payable to an Employee who retires from the service of the Employing Company at his Deferred Retirement Date, subject to the limitations of Section 6.2, will be equal to his Retirement Income determined in accordance with Section 5.1 based on his Accredited Service to his Deferred Retirement Date.

5.4    **Payment of Retirement Income**.    The first payment of an Employee's Retirement Income will be made on his Early Retirement Date, Normal Retirement Date, Deferred Retirement Date, or date of commencement of payment of Retirement Income in accordance with Section 8.1 or 8.2.    Commencement of the distribution of an Employee's Retirement Income shall not be made prior to his Normal Retirement Date without the Employee's consent, except as provided in Section 8.4 of the Plan.

An Employee may elect to commence his Retirement Income on the first day of any month after his Early Retirement Date and before his Normal Retirement Date determined in accordance with Section 5.2.    An election pursuant to this Section to have Retirement Income commence prior to Normal Retirement Date shall be made on a prescribed form and shall be filed with the Retirement Board (or its delegee) at least thirty (30) days before Retirement Income is to commence.

In the event of the death of an Employee who has designated a Provisional Payee or is deemed to have done so in accordance with Article VII, if the designation has become effective, the first payment to be made to the Provisional Payee pursuant to Article VII shall be made to the Provisional Payee on the first day of the month after the later of (a) the Employee's death and (b) the date on which the Employee would have attained his fiftieth (50th) birthday if he had survived to such date, if the Provisional Payee shall then be alive and proof of the Employee's death satisfactory to the Retirement Board (or its delegee) shall have been received by it. Subsequent payments will be made monthly thereafter until the death of such Provisional Payee.

In any event, payment of Retirement Income, including any adjustments thereto caused by an amendment to the Plan providing for or which has the effect of providing retroactively increased Retirement Income, to the Employee shall begin not later than the sixtieth (60th) day after the later of the close of the Plan Year in which falls (a) the Employee's Normal Retirement Date or (b) the date the Employee terminates his service with any Affiliated Employer. Notwithstanding the provisions of the Plan for the monthly payment of Retirement Income, such income may be adjusted and payable annually in arrears if the amount of the Retirement Income is less than $10.00 per month.

5.5    **Termination of Retirement Income**.    The monthly payment of Retirement Income will cease with the last payment preceding the retired Employee's death; subject, however, to the continuation of payments to a surviving Provisional Payee, if one has been designated or deemed to have been designated, which likewise will cease with the last payment

preceding the death of the Provisional Payee. There shall be no benefits payable under the Plan on behalf of any Employee whose death occurs prior to his retirement, except as otherwise provided in Article VII with respect to a Provisional Payee of an Employee or as otherwise provided in a Schedule hereto. Following the death of an Employee and of his Provisional Payee, if any, no further payments will be made under the Plan on account of such Employee or to his estate.

5.6    **Required Distributions**.

(a)    Beginning Date. Once a written claim for benefits is filed with the Retirement Board (or its delegee), payment of benefits to the Employee shall begin not later than sixty (60) days after the last day of the Plan Year in which the latest of the following events occurs:

      (1)    the Employee's Normal Retirement Date;

      (2)    the tenth (10th) anniversary of the date the Employee commenced participation in the Plan; or

      (3)    the Employee's separation from service from any Affiliated Employer.

(b)    Required Minimum Distributions. Notwithstanding any provision of the Plan to the contrary, distributions of benefits shall commence:

      (1)    Except as provided for in (2), for an Employee who attains age 70½ on or after January 1, 1999, by April 1 of the calendar year following the later of the calendar year in which the Employee (A) attains age 70½ , or (B) retires from employment;

      (2)    For Employees who are 5% owners, as defined in Code Section 416, by April 1 of the calendar year following the calendar year in which the Participant attains age 70½.

      (3)    With respect to an Employee who commences receipt of Retirement Income while in active service, the amount of his Retirement Income shall be computed as of the end of the Plan Year during which the Employee attains age 70½ and shall be recomputed as of the close of each Plan Year thereafter and preceding his actual retirement date. Any additional Retirement Income he accrues at the close of any Plan Year pursuant to the preceding sentence shall be offset (but not below zero) by the value of the benefit payments received in such Plan Year. With respect to the Plan Year of retirement, Retirement Income calculated at the Employee's Deferred Retirement Date shall be offset (but not below zero) by the value of the benefit payments received on or after January 1 but before his retirement date in such Plan Year. The receipt by an Employee of any payments or distributions as a result of his attaining age 70½ prior to his actual retirement or death shall in no way affect the entitlement of an otherwise eligible Employee to additional accrued benefits.

(4)    With respect to an Employee who retires after attaining age 70½ and who has not previously commenced receipt of his Retirement Income pursuant to this Section 5.6(b) while an Employee of an Affiliated Employer, the amount of his Retirement Income shall be computed as of the end of the Plan Year during which the Employee attains age 70½ and shall be recomputed as of the close of each Plan Year thereafter and preceding his Deferred Retirement Date. With respect to each Plan Year following the Plan Year the Employee attains age 70½, his Retirement Income shall equal the greater of his Retirement Income determined as of such Plan Year or the Actuarial Equivalent of his Retirement Income computed as of the end of the Plan Year he attains age 70½. For the next Plan Year, his adjusted Retirement Income shall be equal to the greater of his Retirement Income determined as of such Plan Year or the Actuarial Equivalent of his adjusted Retirement Income computed as of the end of the prior Plan Year. This process shall be repeated each Plan Year until his Deferred Retirement Date.

(5)    If a former Employee who is receiving Retirement Income shall be reemployed by any Affiliated Employer as an Employee and his Retirement Income is suspended in accordance with Section 5.8(b), the Retirement Income payable upon his subsequent retirement shall be adjusted in accordance with Section 5.6(b)(3) if his subsequent retirement occurs after he attains age 70½, but shall be reduced by the Actuarial Equivalent of any Retirement Income he received prior to his reemployment in accordance with Section 5.7(c).

(c)    Distribution upon death of Employee.

(1)    If the Employee dies before his entire nonforfeitable interest has been distributed to him, the remaining portion of such interest shall be distributed at least as rapidly as under the method of distribution selected by the Employee as set forth in the provisions of Article VII.

(2)    If the Employee dies before the distribution of his nonforfeitable interest has begun, the entire interest, subject to the provisions of Article VII, shall be distributed monthly to his Provisional Payee, if any, over such Provisional Payee's remaining lifetime.

(d)    Determining required minimum distributions. Notwithstanding anything in this Plan to the contrary, all distributions, including the minimum amounts which must be distributed each calendar year, under this Plan shall be made in accordance with Code Section 401(a)(9) and the regulations thereunder.

(e)    With respect to distributions under the Plan made in calendar years beginning on or after January 1, 2000, the Plan will apply the minimum distribution requirements of Code Section 401(a)(9) in accordance with the regulations under Code Section 401(a)(9) that were proposed in January 2001, notwithstanding any provision of the Plan to the contrary. This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Code Section 401(a)(9) or such other date specified in guidance published by the Internal Revenue Service.

5.7    **Suspension of Retirement Income for Reemployment**.

(a)    If a former Employee who is receiving Retirement Income shall be reemployed by any Affiliated Employer as an Employee and shall not elect to waive his right to participate under the Plan or the pension plan of the Affiliated Employer, whichever applies, his Retirement Income shall cease during each calendar month after his reemployment in which he completes forty (40) or more Hours of Service.  The Retirement Income payable upon his subsequent retirement shall be reduced by the Actuarial Equivalent of any Retirement Income he received prior to his reemployment.

(b)    No payment shall be withheld by the Plan pursuant to this Section unless the Plan notifies the Employee by personal delivery or first class mail during the first calendar month in which the Plan withholds payments that his Retirement Income is suspended.

(c)    If the payment of Retirement Income has been suspended, payments shall resume no later than the first day of the third calendar month after the calendar month in which the Employee ceases to be employed in ERISA Section 203(a)(3)(B) service.  The initial payment upon resumption shall include the payment scheduled to occur in the calendar month when payments resume and any amounts withheld during the period between the cessation of ERISA Section 203(a)(3)(B) service and the resumption of payments.

5.8    **Service in the Armed Forces**.  Active service with the Armed Forces of the United States shall be counted as Vesting Service if the Employee entered or enters active service or training in the Armed Forces directly from the employ of an Employing Company and after discharge or release therefrom returns within ninety (90) days to the employ of an Affiliated Employer, or is deemed to return under Section 2.3 because of the death of such Employee while in active service.

(a)    Notwithstanding any other provisions of the Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

(b)    Service to be credited to any Employee in accordance with this Section may be conditioned by the Retirement Board upon its receipt of (1) such information pertaining to absence of an Employee or former Employee to serve in the Armed Forces of the United States as it may request and (2) such form of receipt and release as it may determine to be appropriate in the circumstances.

## ARTICLE VI
## LIMITATIONS ON BENEFITS

6.1    **Maximum Retirement Income**.  Notwithstanding any other provision of the Plan, the amount of an Employee's Retirement Income shall be subject to the provisions of Article VI.

(a)    The maximum annual amount of Retirement Income payable with respect to an Employee in the form of a straight life annuity without any ancillary benefits after any adjustment for a Provisional Payee designation shall be the lesser of the dollar limitation determined under Code Section 415(b)(1)(A) as adjusted under Code Section 415(d), or the compensation limitation Code Section 415(b)(1)(B) as adjusted under Treasury Regulation Section 1.415-5, subject to the following provisions of Article VI.

(b)    For purposes of this Section 6.1, the term "average compensation for his high three (3) years" shall mean the period of consecutive calendar years (not more than three) during which the Employee was both an active participant in the Plan and had the greatest aggregate compensation from an Employing Company or, if he is also entitled to receive a pension from a defined benefit plan of an Affiliated Employer or if assets and liabilities attributable to the pension of the Employee from a defined benefit plan of an Affiliated Employer have been transferred to this Plan, the greatest aggregate compensation from the Employer and the Affiliated Employer during such high three (3) years.  The limitation described in Section 6.1(a) shall also apply in the case of the payment of an Employee's Retirement Income with a Provisional Payee designation.

(c)    For purposes of Article VI, the term "compensation" means an Employee's earned income, wages, salaries, and fees for professional services, and other amounts received for personal services actually rendered in the course of employment with any Affiliated Employer (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses), and excluding the following:

(1)    Affiliated Employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the Employee and any distributions from a plan of deferred compensation;

(2)    Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(3)    Amounts realized from the sale, exchange, or other disposition of stock acquired under a qualified stock option; and

(4)    Other amounts which received special tax benefits, or contributions made by an Affiliated Employer (whether or not under a salary reduction agreement) towards

20

the purchase of an annuity described in Section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the Employee).

Compensation for any Limitation Year is the compensation, as defined above, which is actually paid or is payable during such year.

(d)     The foregoing limitations regarding the maximum Retirement Income shall not apply with respect to an Employee if the Retirement Income payable under the Plan and under any other defined benefit plans of any Affiliated Employer does not exceed $10,000 for the calendar year or for any prior calendar year, and any Affiliated Employer has not at any time maintained a defined contribution plan in which the Employee has participated.  The terms "defined benefit plan" and "defined contribution plan" shall have the meanings set forth in Section 415(k) of the Code.

6.2     **Adjustment to Defined Benefit Dollar Limitation for Early or Deferred Retirement**.

(a)     If the retirement benefit of an Employee commences before the Employee's Social Security Retirement Age, the Defined Benefit Dollar Limitation shall be reduced in accordance with Code Section 415(b)(2)(C) as prescribed by the Secretary of the Treasury.  The reduction shall be made in such manner as the Secretary of the Treasury may prescribe which is consistent with the reduction for old-age insurance benefits commencing before the Social Security Retirement Age under the Social Security Act.

(b)     If the retirement benefit of an Employee commences after the Employee's Social Security Retirement Age, the Defined Benefit Dollar Limitation shall be adjusted in accordance with Code Section 415(b)(2)(D) as prescribed by the Secretary of the Treasury, based on the lesser of the interest rate assumption under the Plan or on an assumption of five percent (5%) per year.

6.3     **Adjustment of Limitation for Years of Service or Participation**.

(a)     If an Employee has completed less than ten (10) years of participation, the Employee's accrued benefit shall not exceed the Defined Benefit Dollar Limitation as adjusted by multiplying such amount by a fraction, the numerator of which is the Employee's number of years (or part thereof) of participation in the Plan, and the denominator of which is ten (10).

(b)     If an Employee has completed less than ten (10) Years of Service with any Affiliated Employer, the limitations described in Sections 415(b)(1)(B) and 415(b)(4) of the Code shall be adjusted by multiplying such amounts by a fraction, the numerator of which is the Employee's number of years of service (or part thereof), and the denominator of which is ten (10).

(c)     In no event shall paragraphs (a) and (b) above reduce the limitations provided under Sections 415(b)(1), 415(b)(4), and 415(e) of the Code to an amount less than one-tenth (1/10) of the applicable limitation (as determined without regard to this Section 6.3).

(d)     This Section 6.3 shall be applied separately with respect to each change in the benefit structure of the Plan, except as is or may be limited by Revenue Procedure 92-42.

6.4     **Conversion of Retirement Benefit to a Single Life Annuity.**   If an Employee's retirement benefit is payable in a form other than a straight life annuity for the life of the Employee ("Non-Annuity Benefit Form"), whether as the normal form of benefit or as an optional form which the Employee elects, the Non-Annuity Benefit Form is adjusted to a straight life annuity under either (a) or (b) below, whichever is applicable.   No actuarial adjustment to the Non-Annuity Benefit Form is required for (i) the value of a qualified joint and survivor annuity; (ii) the value of benefits that are not directly related to retirement benefits (such as post-retirement medical benefits); or (iii) the value of post-retirement cost-of-living increases made in accordance with the Treasury regulations.

(a)     If an Employee's retirement benefit is payable as a Non-Annuity Benefit Form which is not a form of benefit subject to Code Section 417(e)(3) (e.g., is not a lump sum), first convert the Non-Annuity Benefit Form to a straight life annuity using the interest rate and mortality table, or tabular factors, as applicable, which are specified in the Plan for the Non-Annuity Benefit Form.   Second, convert the Non-Annuity Benefit Form to a straight life annuity using a 5 percent interest rate and the commissioner's standard table used to determine reserves for group annuity contracts in effect on the date as of which the calculation is being made.   The greater of the amounts determined under the two preceding sentences is the equivalent straight life annuity.

(b)     If the Non-Annuity Benefit Form is payable in a form subject to Code Section 417(e)(3) (e.g., a lump or decreasing annuity), the determination of the equivalent straight life annuity is the same as in paragraph (a) above, except that the Applicable Interest Rate, as defined in Section 1.3, is substituted for the 5 percent interest rate.   Thus, the Non-Annuity Benefit Form is converted to a straight life annuity using the interest rate and mortality table or the tabular factors, as applicable, which are set forth in the Plan, or the Applicable Interest Rate and the Applicable Mortality Table, as defined in Section 1.3, whichever gives the greater straight life annuity.

6.5     **Limitations on Benefits from Multiple Plans.**

(a)     For purposes of the limitations described in Section 6.1 of the Plan and Section 415 of the Code, all defined benefit plans (whether or not terminated) maintained by an Affiliated Employer shall be treated as one defined benefit plan.

(b)     Notwithstanding any provisions contained herein to the contrary, in the event that an Employee participates in another defined benefit plan required to be aggregated with this Plan under Code Section 415(g) and the combined benefits with respect to an Employee exceed the

limitations contained in Code Section 415(b), corrective adjustments shall first be made under this Plan.

6.6     **Incorporation of Code Section 415**.  Notwithstanding anything contained in this Article to the contrary, the limitations, adjustments and other requirements prescribed in this Article shall at all times comply with the provisions of Code Section 415 and the regulations thereunder, the terms of which are specifically incorporated herein by reference.

## ARTICLE VII
## PROVISIONAL PAYEE

7.1  **Adjustment of Retirement Income to Provide for Payment to Provisional Payee.** An Employee who desires to have his Accrued Retirement Income adjusted in accordance with the provisions of this Article VII to provide a reduced amount of Retirement Income payable to him for his lifetime commencing on his Early Retirement Date, his Normal Retirement Date, or his Deferred Retirement Date, as the case may be, may elect, in accordance with the provisions of this Article VII, at his option, either:

(a)  that an amount of Retirement Income be payable to him for his lifetime which is equal to eighty percent (80%) of the Retirement Income which would otherwise be payable to him, but for such election (taking into account any reduction required in accordance with Sections 7.3 and 7.4(a)), with the provision that the same amount will be continued after his death to his Provisional Payee until the death of such Provisional Payee, or

(b)  that an amount of Retirement Income be payable to him for his lifetime which is equal to ninety percent (90%) of the Retirement Income which would otherwise be payable to him, but for such election (taking into account any reduction required in accordance with Sections 7.3 and 7.4(a)), with the provision that one-half (1/2) of the amount payable to the Employee will be continued after his death to his Provisional Payee until the death of such Provisional Payee, or

(c)  that an amount of Retirement Income be payable to him for his lifetime which is equal to seventy-five percent (75%) of the Retirement Income which would otherwise be payable to him, but for such election (taking into account any reduction required in accordance with Sections 7.3 and 7.4(a)), with the provision that the same amount will be continued after his death to his Provisional Payee until the death of such Provisional Payee, or, if such Provisional Payee predeceases the Employee, the Employee's Retirement Income automatically increases to a monthly amount equal to the Retirement Income which would be payable to him had he not elected the form of benefit described in this Section 7.1(c) and instead had elected the single life annuity form of benefit, or

(d)  that an amount of Retirement Income be payable to him for his lifetime which is equal to eighty-eight percent (88%) of the Retirement Income which would otherwise be payable to him, but for such election (taking into account any reduction required in accordance with Sections 7.3 and 7.4(a)), with the provision that one-half (1/2) of the amount payable to the Employee will be continued after his death to his Provisional Payee until the death of such Provisional Payee, or, if such Provisional Payee predeceases the Employee, the Employee's Retirement Income automatically increases to a monthly amount equal to the Retirement Income which would be payable to him had he not elected the form of benefit described in this Section 7.1(d) and instead had elected the single life annuity form of benefit.

**7.2    Form and Time of Election and Notice Requirements.**

(a)    An election of payment and designation of a Provisional Payee in accordance with Section 7.1 shall be made in writing at the same time on a prescribed form delivered to the Retirement Board (or its delegee). The election and designation shall specify its effective date which shall not be sooner than the date received by the Retirement Board (or its delegee) or the Employee's fiftieth (50th) birthday, whichever is later, nor later than the date of commencement of payments in accordance with this Article VII.   Notwithstanding the preceding paragraph, an election under Section 7.1(c) or (d) must be in the form of a written Qualified Election, and shall not become effective until the commencement of Retirement Income payments under the Plan.

(b)    An election of payment to be made in accordance with paragraph (a), (b), (c), or (d) of Section 7.1 may be changed by an Employee, provided the written election of the change specifies an effective date which shall not be sooner than the date received by the Retirement Board (or its delegee) or the Employee's fiftieth (50th) birthday, whichever is later, nor later than the date of commencement of payments in accordance with this Article VII.  Notwithstanding the preceding sentence, an election under Section 7.1(c) or (d) must be in the form of a written Qualified Election, and shall not become effective until the commencement of Retirement Income payments under the Plan.   To the extent that the new method of payment shall afford the Employee changed protection in the event of his death after the effective date of the new election and prior to retirement, his Accrued Retirement Income shall be adjusted pursuant to Section 7.4(a) to reflect such changed protection.

(c)    With respect to Sections 7.5 and 7.6, within the period not less than thirty (30) days and not more than ninety (90) days prior to the anticipated commencement of benefits, the Employee shall be furnished, by mail or personal delivery, a written explanation of:  (1) the terms and conditions of the reduced Retirement Income payable as provided in Section 7.1; (2) the Employee's right to make, and the effect of, an election to waive the payment of reduced Retirement Income pursuant to a Provisional Payee designation; (3) the rights of the Employee's Provisional Payee; and (4) the right to make, and the effect of, a revocation of a previous election to waive the payment of reduced Retirement Income pursuant to a Provisional Payee designation. Notwithstanding the preceding sentence, such written explanation may be furnished after an Employee's Early, Normal or Deferred Retirement date, as applicable, if in the discretion of the Retirement Board the circumstances so warrant, provided the Employee shall have at least thirty (30) days after being furnished the written explanation to elect payment in accordance with paragraph (a) above.  Notwithstanding the above, an Employee may elect (with the consent of his Provisional Payee) to waive any requirement that the written explanation be provided at least thirty (30) days before the Employee's annuity starting date provided the distribution commences more than seven (7) days after such explanation is provided.

Within thirty (30) days following an Employee's written request received by the Retirement Board (or its delegee) during the election period, but within sixty (60) days from the date the Employee is furnished all of the information prescribed in the immediately preceding sentence, the Employee shall be furnished an additional written explanation, in terms of dollar amounts, of the financial effect of an election by him not to receive such reduced Retirement

Income. If an Employee makes such request, the election period herein prescribed shall end not earlier than sixty (60) calendar days following the day of the mailing or personal delivery of the additional explanation to the Employee. Except that if an election made as provided in Section 7.5 or 7.6 is revoked, another election under that Section may be made during the specified election period.

7.3     **Circumstances in Which Election and Designation are Inoperative.** An election and designation made pursuant to this Article shall be inoperative and the regular provisions of the Plan shall again become applicable as if a Provisional Payee had not been designated if, prior to the commencement of any payment in accordance with this Article VII: (a) an Employee's Provisional Payee shall die, (b) the Employee and the Provisional Payee shall be divorced under a final decree of divorce, or (c) the Retirement Board (or its delegee) shall have received the written Qualified Election of the Employee to rescind his election of payment and designation of a Provisional Payee in order to receive a single life annuity form of benefit. If such a Qualified Election to rescind is made by the Employee, his Accrued Retirement Income shall be reduced to reflect the protection afforded the Employee by any Provisional Payee designation during the period from its effective date to the date of the Retirement Board's (or its delegee's) receipt of the Employee's Qualified Election to rescind if the option as to payments of reduced Retirement Income was in accordance with either Section 7.1(a), 7.6(a), or 7.6(b). If an Employee remarries subsequent to the death or divorce of his Provisional Payee and prior to the commencement of payments in accordance with this Article VII, then he shall be entitled to designate a new Provisional Payee in the manner set forth in Section 7.2.

7.4     **Pre-Retirement Death Benefit.** If an active Employee of the Employer dies prior to his Normal Retirement Date (or his Deferred Retirement Date, if applicable), and is survived by his spouse whom he was married to at the time of his death, there shall be payable to his surviving spouse (whom he shall be deemed to have designated as his Provisional Payee) Retirement Income determined in accordance with paragraph 7.4(a) or paragraph 7.4(b). Such Retirement Income shall commence on the later of the first day of the month following the death of the Employee or the first day of the month following the date on which he would have attained his fiftieth (50th) birthday, however, the Provisional Payee shall have the option to defer payment until the first day of any subsequent month preceding what would have been the former Employee's Normal Retirement Date. In any event, the Provisional Payee shall commence receipt of such Retirement Income no later than what would have been the former Employee's Normal Retirement Date, whichever is later. Such Retirement Income shall cease with the last payment preceding the death of his Provisional Payee.

(a)     The Retirement Income of the Provisional Payee of a deceased Employee that died after attaining age fifty (50) shall be calculated in accordance with Section 7.1(b) based on the Employee's Accredited Service at time of death, or if the Employee shall have attained his fiftieth (50th) birthday and elected prior to his death, such Retirement Income shall be calculated in accordance with Section 7.1(a) based on the Employee's Accredited Service at time of death, and reduced as set forth in the next sentence. If the election was made by the Employee, the Retirement Income which shall be payable to the Employee if he lives to his Early Retirement Date or the first day of the month following his attainment of age sixty-five (65), if later, shall be

reduced by three-fourths of one percent (0.75%) for each year (prorated for a fraction of a year from the first day of the month following the effective date of the election) which has elapsed from the effective date of his election to the earlier of (1) the commencement of Retirement Income on or after his Early Retirement Date or the first day of the month following his attainment of age sixty-five (65), if later, or (2) the revocation of such election. If he shall die before the commencement of Retirement Income on or after his Early Retirement Date or the first day of the month following his attainment of age sixty-five (65), if later, his Accrued Retirement Income to the date of his death shall be reduced by three-quarters of one percent (0.75%) for each year (prorated for a fraction of a year from the first day of the month following the effective date of the election) between the effective date of his election and the first day of the month following his attainment of age sixty-five (65). No reduction in the Employee's Retirement Income shall be made for the period during which the election is in effect after the first day of the month following his attainment of age sixty-five (65).

(b)     Subject to Section 7.7, for an Employee who dies while in the service of an Employing Company (or while in the service of an Affiliated Employer to which his employment had been transferred) prior to his fiftieth (50th) birthday after completing five (5) Vesting Years of Service, the amount of such Retirement Income payable to the Provisional Payee shall be calculated as provided in Section 7.1(b) determined on the basis of his Accredited Service to the date of his death.

7.5     **Post-Retirement Death Benefit – Qualified Joint and Survivor Annuity**.  If at his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, as the case may be, an Employee is married and he has not designated a Provisional Payee in accordance with Section 7.1 in respect of payments to be made commencing on his Early, Normal, or Deferred Retirement Date he shall nevertheless be deemed to have made an effective designation of a Provisional Payee under this Section 7.5 and to have specified the payment of a benefit as provided in Section 7.1(b).

7.6     **Election and Designation by Former Employee**.

(a)     If a former Employee is entitled to receive in accordance with Section 8.1 Retirement Income commencing at his Normal Retirement Date, or sooner in accordance with Section 8.2, he may, on or after his fiftieth (50th) birthday, designate his spouse as his Provisional Payee and elect to have his Accrued Retirement Income at the date of termination of his service actuarially adjusted to provide, at his option, in the event of the commencement of payment prior to his Normal Retirement Date either:

(1)     a reduced amount payable to him for his lifetime with the provision that such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee; or

(2)     a reduced amount payable to him for his lifetime with the provision that one-half (1/2) of such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee; or

    (3)    a reduced amount payable to him for his lifetime with the provision that such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee, or, if such Provisional Payee predeceases the former Employee, the former Employee's Retirement Income automatically increases to a monthly amount equal to the Retirement Income which would be payable to him had he not elected the form of benefit described in this Section 7.6(a)(3) and instead had elected the single life annuity form of benefit; or

    (4)    a reduced amount payable to him for his lifetime with the provision that one-half (½) of such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee, or, if such Provisional Payee predeceases the former Employee, the former Employee's Retirement Income automatically increases to a monthly amount equal to the Retirement Income which would be payable to him had he not elected the form of benefit described in this Section 7.6(a)(4) and instead had elected the single life annuity form of benefit.

    (b)    A former Employee's election and designation of his Provisional Payee made in accordance with this Section 7.6 shall be in writing on a prescribed form delivered to the Retirement Board (or its delegee) and shall become effective not sooner than the date received or the former Employee's fiftieth (50th) birthday, whichever is later, nor later than the date of commencement of payment in accordance with this Section 7.6. Notwithstanding the preceding sentence, an election under Section 7.6(a)(3) or (4), must be in the form of a written Qualified Election, and shall not become effective until commencement of Retirement Income payments under the Plan.

    (c)    If the former Employee dies prior to his Normal Retirement Date but after the effective date of his Provisional Payee designation, there will be payable to his Provisional Payee for life Retirement Income in a reduced amount in accordance with the former Employee's election of payments to be made to his Provisional Payee after the death of the former Employee under Section 7.6(a)(1), (2), (3), or (4) as the case may be commencing, at the election of the Provisional Payee on the first day of the calendar month after the former Employee's death, or the first day of any subsequent month preceding what would have been the former Employee's Normal Retirement Date. In any event, the Provisional Payee shall commence receipt of such Retirement Income no later than what would have been the former Employee's Normal Retirement Date. Such Retirement Income shall cease with the last payment preceding the death of his Provisional Payee. Notwithstanding the preceding sentence, an election under Section 7.6(a)(3) or (4), must be in the form of a written Qualified Election, and shall not become effective until commencement of Retirement Income payments under the Plan. However, if prior to the former Employee's death, the Retirement Board (or its delegee) has not received such election, payment of a reduced amount of Retirement Income will be made in accordance with Section 7.6(a)(2) to his surviving spouse to whom he is married at the time of his death, unless (1) at the time of his death there is in effect a Qualified Election by the former Employee that reduced Retirement Income shall not be paid to his surviving spouse in accordance with this Section 7.6 should he die between his fiftieth (50th) birthday and his Normal Retirement Date

without having elected that payment be made to a Provisional Payee and (2) at least one hundred eighty (180) days prior to his fiftieth (50th) birthday a written explanation is provided to the former Employee of:   (A) the terms and conditions of the Retirement Income payable to his Provisional Payee as provided in this Section 7.6; (B) the former Employee's right to make, and the effect of, an election to waive the payment of Retirement Income to his Provisional Payee; (C) the rights of a former Employee's spouse; and (D) the right to make, and the effect of, a revocation of a previous election to waive the payment of Retirement Income to his Provisional Payee.

(d)     If the former Employee is entitled to receive payment of Retirement Income in accordance with Section 8.2 after his fiftieth (50th) birthday and prior to his Normal Retirement Date and elects to do so, a reduced amount of Retirement Income determined in accordance with this Section 7.6, based upon his Accrued Retirement Income at the date of termination of his service (actuarially reduced in accordance with Section 8.2) will be payable to him commencing on the date on which payments commence prior to Normal Retirement Date in accordance with Section 8.2 with payments in the same or reduced amount to be continued to his Provisional Payee for life after the former Employee's death in accordance with his election under Section 7.6(a)(1), (2), (3), or (4), as the case may be.   However, if the former Employee is married and he has not designated a Provisional Payee in respect of payments to commence to him prior to his Normal Retirement Date or elected that payment be made to him in the mode of a single life annuity pursuant to a Qualified Election, he shall be deemed to have designated a Provisional Payee pursuant to this Section 7.6 and thereby specified that a reduced Retirement Income shall be paid to him during his lifetime as provided in Section 7.6(a)(2) and continued after his death to his Provisional Payee as provided in Section 7.6(a)(2).

(e)     If the former Employee is alive on his Normal Retirement Date and is married and payment of Retirement Income has not commenced, the provisions of Section 7.5 shall be applicable to the payment of his Retirement Income, unless he shall elect, subject to Section 7.1 and Section 7.6, at his Normal Retirement Date to receive payment of his Retirement Income pursuant to Section 7.1(a), (b), (c), or (d).   However, if an election and designation in accordance with this Section 7.6 was in effect prior to his Normal Retirement Date, the former Employee's Accrued Retirement Income at his Normal Retirement Date shall be actuarially adjusted for the period the election and designation was in effect.

(f)     The Retirement Income of the Provisional Payee of a deceased former Employee that died after attaining age fifty (50) shall be calculated in accordance with Section 7.6(a)(2) based on the Employee's Accredited Service at time of death, or if the Employee elected prior to his death, such Retirement Income shall be calculated in accordance with Section 7.6(a)(1) based on the Employee's Accredited Service at time of death, and reduced as set forth below.

(1)     If option set forth in Section 7.6(a)(2) is applicable, the Retirement Income which shall be payable to the Employee if he lives to his fiftieth (50th) birthday or the first day of the month following his attainment of age sixty-five (65), if later, shall be reduced by seven-eighths of one percent (0.875%) for each year (prorated for a fraction of a year from the first day of the month following the effective date of the election) which has

elapsed from the effective date of his election to the earlier of (1) the commencement of Retirement Income on or after his fiftieth (50th) birthday or the first day of the month following his attainment of age sixty-five (65), if later, or (2) the revocation of such election. If he shall die before the commencement of Retirement Income on or after his fiftieth (50th) birthday or the first day of the month following his attainment of age sixty-five (65), if later, his Accrued Retirement Income to the date of his death shall be reduced by seven-eighths of one percent (0.875%) for each year (prorated for a fraction of a year from the first day of the month following the effective date of the election) between the effective date of his election and the first day of the month following his attainment of age sixty-five (65). No reduction in the Employee's Retirement Income shall be made for the period during which the election is in effect after the first day of the month following his attainment of age sixty-five (65).

(2)     If an election for the option set forth in Section 7.6(a)(1) was made by the Employee, the Retirement Income which shall be payable to the Employee if he lives to his fiftieth (50th) birthday or the first day of the month following his attainment of age sixty-five (65), if later, shall be reduced by one and one-half percent (1.5%) for each year (prorated for a fraction of a year from the first day of the month following the effective date of the election) which has elapsed from the effective date of his election to the earlier of (1) the commencement of Retirement Income on or after his Early Retirement Date or the first day of the month following his attainment of age sixty-five (65), if later, or (2) the revocation of such election. If he shall die before the commencement of Retirement Income on or after his fiftieth (50th) birthday or the first day of the month following his attainment of age sixty-five (65), if later, his Accrued Retirement Income to the date of his death shall be reduced by one and one-half percent (1.5%) for each year (prorated for a fraction of a year from the first day of the month following the effective date of the election) between the effective date of his election and the first day of the month following his attainment of age sixty-five (65). No reduction in the Employee's Retirement Income shall be made for the period during which the election is in effect after the first day of the month following his attainment of age sixty-five (65).

7.7     **Death Benefit for Provisional Payee of Former Employee.** If an Employee dies after termination of employment, and prior to his death he (a) has not attained his fiftieth (50th) birthday, (b) has completed at least five (5) Vesting Years of Service, and (c) is survived by his spouse to whom he shall be married at his death, then there shall be payable to his surviving spouse (whom he shall be deemed to have designated as his Provisional Payee) Retirement Income determined in accordance with this Section 7.7. Such Retirement Income shall be equal to one-half of the reduced amount, as actuarially adjusted to provide for the payment of such Retirement Income beginning as of the first day of the month following the date on which such deceased former Employee would have attained his fiftieth (50th) birthday and to provide for the determination of such Retirement Income on a joint and fifty percent (50%) survivor basis of the former Employee's Accrued Retirement Income, determined on the basis of his Accredited Service to the date of his death. The Provisional Payee shall be eligible to commence receipt of such Retirement Income on the first day of the month following the date on which the former Employee would have attained his fiftieth (50th) birthday if he were still alive, or the first day of

any subsequent month preceding what would have been the former Employee's Normal Retirement Date, and shall cease with the last payment preceding the death of his Provisional Payee. In any event, the Provisional Payee shall commence receipt of such Retirement Income no later than what would have been the former Employee's Normal Retirement Date.

7.8    **Limitations on Employee's and Provisional Payee's Benefits**.

(a)    With respect to an Employee who does not elect a single life annuity, the limitation on benefits imposed under Article VI shall be applied as if such Employee had elected a benefit in the form of a single life annuity.

(b)    With respect to a Provisional Payee, the limitations on benefits imposed under Article VI shall be applied consistent with paragraph (a) above prorated to provide a limitation equal to or one-half of the Employee's limitation as appropriate in accordance with annuity form of benefit elected by the Employee.

7.9    **Level Income Option**.    At the option of the Employee exercised at or prior to commencement of his Retirement Income on or after his Early Retirement Date (provided he shall not have in effect at such Early Retirement Date a Provisional Payee designation pursuant to Section 7.1), he may have his Retirement Income adjusted upwards in an amount which will make his Retirement Income payable up to age sixty-five (65) equal, as nearly as may be, to the amount of his Federal primary Social Security benefit (primary old age insurance benefit) estimated to become payable after age sixty-five (65), as computed at the time of his retirement, plus a reduced amount, if any, of Retirement Income actuarially determined to be payable after age sixty-five (65). The Federal primary Social Security benefit used in calculating an Employee's Retirement Income payable under the Plan shall be calculated in accordance with Section 1.30.

7.10    **Effect of Election under Article VII**.    An election of payment or a deemed election of payment in accordance with this Article VII shall be in lieu of any other form or method of payment of Retirement Income.

7.11    **Cash-Out**.    Effective as of August 9, 2001, and notwithstanding any other provision of this Plan, if the present value of Accrued Retirement Income of a Provisional Payee of an Employee who dies while in the service of an Employing Company (or while in the service of an Affiliated Employer to which his employment had been transferred) is not more than $5,000 (or such greater amount as permitted by the regulations prescribed by the Secretary of the Treasury), the present value of the Provisional Payee's Accrued Retirement Income shall be paid in a lump sum, in cash, to such Provisional Payee. The present value of the Accrued Retirement Income shall be calculated as of the date of distribution of the lump sum applying the Applicable Interest Rate as defined in Section 8.5(c). For purposes of this Section 7.11, if the present value of the Provisional Payee's Accrued Retirement Income is zero, the Provisional Payee shall be deemed to have received a distribution of such Retirement Income.