# EXHIBIT 1 (a)

**ARTICLE VIII**
**TERMINATION OF SERVICE**

8.1     **Vested Interest**.

(a)     If an Employee under the Plan terminates for any reason other than death or retirement as provided by Article III with at least five (5) Vesting Years of Service with any Affiliated Employer, whether or not Accredited Service, he will be entitled to receive, commencing at Normal Retirement Date (except as provided in Section 8.2 and subject to the provisions of Section 7.6) Retirement Income equal to his Accrued Retirement Income at the date of the termination of service, provided he submits an application to the Retirement Board (or its delegee) for the payment of such Retirement Income.

(b)     If proper application for payment of Retirement Income shall not be received by the Retirement Board (or its delegee) by the April 1 of the calendar year following the calendar year in which the Employee attains age 70½, and the whereabouts of the Employee cannot be determined by the Retirement Board (or its delegee), Retirement Income shall be paid to the Employee's Provisional Payee, if any, and if surviving and the whereabouts known to the Retirement Board (or its delegee), or applied in such other manner as the Retirement Board shall deem appropriate. The payment of Retirement Income pursuant to this provision shall completely discharge all liability of the Retirement Board (or its delegee), the Employer, and the Trustee or other payor to the extent of the payments so made.

(c)     If an Employee terminates with less than five (5) Vesting Years of Service with any Affiliated Employer, he shall immediately forfeit any Accrued Retirement Income under the Plan based upon his service prior to such termination.

8.2     **Early Distribution of Vested Benefit**. If an Employee terminates with at least ten (10) years of Accredited Service from service before his fiftieth (50th) birthday and is entitled to receive under Section 8.1 Retirement Income commencing at his Normal Retirement Date, he may elect to receive Retirement Income commencing as of the first day of any month after his fiftieth (50th) birthday but preceding his Normal Retirement Date in an amount equal to his Accrued Retirement Income at the date of termination of his service reduced by five-tenths of one percent (0.5%) for each calendar month by which the commencement date of his Retirement Income precedes his Normal Retirement Date but follows the first day of the month following his attainment of his fifty-fifth (55th) birthday and reduced one-third of one-percent (0.333%) for each calendar month by which the commencement date precedes the first day of the month following his attainment of his fifty-fifth (55th) birthday. An election pursuant to this Section 8.2 to have Retirement Income commence prior to Normal Retirement Date shall be made on a prescribed form and shall be filed with the Retirement Board (or its delegee) at least thirty (30) days before Retirement Income is to commence.

8.3     **Years of Service of Reemployed Employees**. If an Employee terminates service and is again employed by an Affiliated Employer as an Employee, his Years of Service with any

Affiliated Employer and his Accredited Service immediately prior to the termination of his service shall be treated as provided in this Section 8.3, subject to Section 8.4.

(a)    If at the time of his reemployment he has not incurred a One-Year Break in Service, his Years of Service with an Affiliated Employer and his Accredited Service will be restored whether or not he is entitled to receive Retirement Income in accordance with Section 8.1.

(b)    If at the time of termination of his service he is entitled to receive Retirement Income in accordance with the provisions of Section 8.1, upon his reemployment his Years of Service with an Affiliated Employer immediately prior to the termination of his service shall be restored whether or not he has incurred a One-Year Break in Service.

(c)    If at the time of reemployment he is not entitled to receive Retirement Income in accordance with Section 8.1 and he (1) has incurred less than five (5) consecutive One-Year Breaks in Service or (2) has incurred five (5) or more consecutive One-Year Breaks in Service, but his Years of Service prior to such One-Year Breaks in Service exceeded the consecutive One-Year Breaks in Service, then his Years of Service with an Affiliated Employer and his Accredited Service prior to the first One-Year Break in Service shall be restored, disregarding any Years of Service with an Affiliated Employer which are not required to be taken into account by reason of any previous One-Year Breaks in Service.

(d)    Years of Service and Accredited Service restored to an Employee in accordance with this Section 8.3 shall be aggregated with Years of Service and Accredited Service to which the Employee may be entitled after his reemployment. If, however, the Minimum Retirement Income so determined for the Employee upon his subsequent retirement or termination of service shall be less than the aggregate of: (1) his Minimum Retirement Income, if any, determined in respect of the period ending with his prior termination of service, and (2) his Minimum Retirement Income determined in respect of the period after his reemployment, the aggregate of such Minimum Retirement Incomes shall be deemed to be his Minimum Retirement Income upon such subsequent retirement or termination of service. In any event, his Retirement Income, however computed, shall be reduced by the Actuarial Equivalent of any Retirement Income he received with respect to his prior period of employment.

8.4    **Cash-Out and Buy-Back.**

(a)    Effective as of August 9, 2001, and notwithstanding any other provision of this Plan, if the present value of Accrued Retirement Income of an Employee whose service terminates for any reason other than transfer to an Affiliated Employer is not more than $5,000 (or such greater amount as permitted by the regulations prescribed by the Secretary of the Treasury), the present value of the Employee's Accrued Retirement Income shall be paid in a lump sum, in cash, to such terminated Employee. The present value of the Accrued Retirement Income shall be calculated as of the date of distribution of the lump sum applying the Applicable Interest Rate as defined in Section 8.5(c). For purposes of this Section 8.4, if the present value of the Employee's vested

Accrued Retirement Income is zero, the Employee shall be deemed to have received a distribution of such vested Retirement Income.

(b)    A terminated Employee who has been paid a lump sum of the present value of his Accrued Retirement Income in accordance with paragraph (a) above shall not be entitled to repay this amount to the Trust. If such terminated Employee is subsequently reemployed and attains his Early Retirement Date, Normal Retirement Date, or Deferred Retirement Date, or terminates service for any reason subject to the requirements of Section 8.1 or 8.2, the Employee shall receive Retirement Income based on all Accredited Service, including Accredited Service earned prior to reemployment, but reduced by the Actuarial Equivalent of the lump sum payment made in accordance with paragraph (a).

8.5    **Calculation of Present Value.**

(a)    This Section shall apply to all distributions from the Plan and from annuity contracts purchased to provide Accrued Retirement Income other than distributions described in Treasury Regulation Section 1.417(e)-1(d)(6), or any successor thereto.

(b)    For purposes of determining whether the present value of (A) an Employee's vested accrued benefit; (B) a qualified joint and survivor annuity, within the meaning of Section 417(b) of the Code; or (C) a qualified pre-retirement survivor annuity within the meaning of Section 417(c)(1) of the Code exceeds $5,000, the present value of such benefits or annuities shall be calculated by using the Applicable Interest Rate and the prevailing commissioners' standard table used to determine reserves for group annuity contracts in effect on the date as of which the present value is being determined.

In no event shall the amount of any benefit or annuity determined under this Section 8.5 exceed the maximum benefit permitted under Section 415 of the Code.

(c)    For purposes of this Section 8.5, "Applicable Interest Rate" shall be the annual rate of interest on 30-year Treasury securities for the month of August in the Plan Year which precedes the Plan Year in which such present value is determined. Notwithstanding the foregoing, for the Plan Year beginning January 1, 2001, the Applicable Interest Rate shall be calculated using the annual rate of interest on 30-year Treasury securities for the month of August, or for the month of November, in the Plan Year which precedes such Plan Year, whichever month's rate of interest produces the greater amount.

8.6    **Requirement for Direct Rollovers.**  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Article VIII, a Distributee may elect on a prescribed form to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

(a)     An Eligible Rollover Distribution is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include:

(1)     any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's spouse, or for a specified period of 10 years or more;

(2)     any distribution to the extent such distribution is required under Code Section 401(a)(9); and

(3)     the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(b)     An Eligible Retirement Plan is an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), or a qualified trust described in Code Section 401(a) that accepts the Distributee's Eligible Rollover Distribution.  However, in the case of an Eligible Rollover Distribution for a Provisional Payee, an Eligible Retirement Plan is an individual retirement account or individual retirement annuity.

(c)     A Distributee includes an Employee or former Employee.   In addition, a Distributee includes the Employee's or former Employee's spouse who is an alternate payee under a qualified domestic relations order, as defined in Code Section 414(p).

(d)     A Direct Rollover is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

## ARTICLE IX
## CONTRIBUTIONS

9.1    **Contributions Generally**.  All contributions necessary to provide the Retirement Incomes under the Plan will be made from time to time by or on behalf of the Employing Companies and no contributions will be required of the Employees.  All contributions shall be made to the Trustee under the Trust Agreement provided for in Article XI, and if a group annuity contract shall be entered into with a life insurance company ("contract with an insurance company"), contributions may also be made to the insurance company.

The minimum amount of contributions to be made by or on behalf of the Employing Companies for any Plan Year of the Plan shall be such amount as is required to meet the minimum funding standards of ERISA and any regulations in respect thereto.  However, the Employing Companies are under no obligation to make any contributions under the Plan after the Plan is terminated, whether or not Retirement Income accrued or vested prior to the date of termination has been fully funded.  All contributions are expressly conditioned upon the deductibility of such contributions by the Employing Companies pursuant to Section 404 of the Code.

9.2    **Return of Employing Company Contributions**.  All contributions made pursuant to the Plan shall be held by the Trustee in accordance with the terms of the Trust Agreement for the exclusive benefit of those Employees who are participants under the Plan, including former Employees and their beneficiaries, and shall be applied to provide benefits under the Plan and to pay expenses of administration of the Plan and Trust, to the extent that such expenses are not otherwise paid.  At no time prior to the satisfaction of all liabilities with respect to such Employees and their beneficiaries shall any part of the Trust Fund be used for, or diverted to, purposes other than for the exclusive benefit of such Employees and their beneficiaries.  However, notwithstanding the provisions of this Section 9.2:

(a)    If a contribution is conditioned upon the deductibility of the contributions under Section 404 of the Code, then, to the extent the deduction is disallowed, the Trustee shall upon written request of an Employing Company, return the contribution (to the extent disallowed) to such Employing Company within one year after the date the deduction is disallowed.

(b)    If a contribution or any portion thereof is made by an Employing Company by a mistake of fact, the Trustee shall, upon written request of such Employing Company, return the contribution or such portion to the Employing Company within one year after the date of payment to the Trustee.

(c)    The amount which may be returned to an Employing Company under this Section 9.2, is the excess of (a) the amount contributed over (b) the amount that would have been contributed had there not occurred a mistake of fact or a mistake in determining the deduction.  Earnings attributable to the excess contribution shall not be returned to such Employing Company, but losses attributable thereto shall reduce the amount to be so returned.

(d)    If permitted under Federal common law, the Employing Company may recover any other contributions to the Plan or payments to any other entity to the extent such contributions or payments unjustly enrich or otherwise gratuitously benefit such entity.

9.3    **Expenses.**    Prior to termination of the Plan, all investment expenses (including brokerage costs, transfer taxes, shipping expenses, and charges of correspondent banks of the Trustee) and any taxes which may be levied against the Trust shall be charged to the Trust.  All other expenses prior to the termination of the Plan shall either be paid by the Employing Companies or charged to or reimbursed by the Trust, as determined in the discretion of the Mirant Services, LLC Investment Review Committee.  After the termination of the Plan, all expenses shall be levied against the Trust and shall be charged to the Trust.

9.4    **Forfeitures.**    Forfeitures arising by reason of an Employee's termination of service for any reason shall not be applied to increase the benefits any Employee would otherwise receive under the Plan but shall be used to reduce contributions of the Employing Companies to the Plan.

**ARTICLE X**
**ADMINISTRATION OF PLAN**

10.1    **Retirement Board.**  The general administration of the Plan shall be placed in a Retirement Board who shall be appointed from time to time by the Board of Managers to serve at the pleasure of the Board of Managers.

10.2    **Organization and Transaction of Business of Retirement Board.**

(a)    Any person appointed a member of the Retirement Board shall signify his acceptance by filing written acceptance with the Board of Managers.  Any member of the Retirement Board may resign by delivering his written resignation to the Board of Managers, and such resignation shall become effective at delivery or at any later date specified therein.

(b)    The members of the Retirement Board shall elect a Chairman from their number, and a Secretary who may be but need not be one of the members of the Retirement Board, and shall designate an actuary to act in actuarial matters relating to the Plan.  They may appoint from their number such committees with such powers as they shall determine, may authorize one or more of their number or any agent to make any payment in their behalf, or to execute or deliver any instrument except that a requisition for funds from the Trustee shall be signed by two (2) members of the Retirement Board unless the Retirement Board determines in writing to delegate such requisition authority.

(c)    The Retirement Board shall hold meetings upon such notice, at such place or places, and at such time or times as they may from time to time determine.

(d)    A majority of the members of the Retirement Board at the time in office shall constitute a quorum for the transaction of business.  All resolutions or other actions taken by the Retirement Board at any meeting shall be by the vote of a majority of the Retirement Board at the time in office.  Any determination or action of the Retirement Board may be made or taken without a meeting by a resolution or written memorandum concurred upon by a majority of the members then in office.

(e)    No member of the Retirement Board who is also an Employee of an Employing Company shall receive any compensation from the Plan for his service as such.

(f)    No bond or other security need be required of any member in any jurisdiction except as may be required by ERISA.

10.3    **Administrative Responsibilities of Retirement Board.**  The Retirement Board, in addition to the functions and duties provided for elsewhere in the Plan, shall have exclusive discretionary authority for the following:

(a)    construing and interpreting the Plan;

(b)    determining all questions affecting the eligibility of any Employee, retired Employee, former Employee, Provisional Payee, or alternate payee;

(c)    determining all questions affecting the amount of the benefit payable hereunder;

(d)    ascertaining the persons to whom benefits shall be payable under the provisions hereof;

(e)    to the extent provided in the Plan, authorizing and directing disbursements of benefits from the Plan;

(f)    making final and binding determinations in connection with any questions of fact which may arise regarding the operation of the Plan;

(g)    making such rules and regulations with reference to the operation of the Plan as it may deem necessary or advisable, provided that such rules and regulations shall not be inconsistent with the express terms of the Plan or ERISA;

(h)    prescribing such procedures and adopting such forms as it determines necessary under the terms of the Plan; and

(i)    reviewing such denials of claims for benefits as may arise.

Any action by the Retirement Board under this Section 10.3 shall be binding and conclusive. To the extent that the Retirement Board delegates any of the foregoing duties or functions to another party, the Retirement Board retains the ultimate authority to act in accordance with this Section 10.3.

10.4    **The "Administrator"**. For the purposes of compliance with the provisions of ERISA, the Retirement Board shall be deemed the "administrator" of the Plan as that term is defined in ERISA, and the Retirement Board shall be, with respect to the Plan, a "named fiduciary" as that term is defined in ERISA. For the purpose of carrying out its duties, the Retirement Board may, in its discretion, allocate responsibilities under the Plan among its members and may, in its discretion, designate in writing, as set forth in the records of the Retirement Board, persons other than members of the Retirement Board to carry out such responsibilities of the Retirement Board under the Plan as it may see fit.

10.5    **Fiduciary Responsibilities**. It is intended, that to the maximum extent permitted by ERISA, each person who is a "fiduciary" with respect to the Plan as that term is defined in ERISA shall be responsible for the proper exercise of his own powers, duties, responsibilities, and obligations under the Plan and the Trust or other funding medium, as shall each person designated by any fiduciary to carry out any fiduciary responsibility with respect to the Plan, the Trust or other funding medium and no fiduciary or other person to whom fiduciary responsibilities are allocated shall be liable for any act or omission of any other fiduciary or of any other person

delegated to carry out any fiduciary or other responsibility under the Plan or the Trust or other funding medium.

Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan and any fiduciary with respect to the Plan may serve as a fiduciary with respect to the Plan in addition to being an officer, employee, agent, or other representative of a "party in interest" as that term is defined in ERISA.

10.6    **Employment of Actuaries and Others**.  The Retirement Board may employ such "enrolled actuaries" and independent "qualified public accountants" as such terms are defined in ERISA, legal counsel (who may be of counsel to an Employing Company), other specialists, and other persons as the Retirement Board deems necessary or desirable in connection with the administration of the Plan.  The Retirement Board and any person to whom it may delegate any duty or power in connection with the administration of the Plan, an Employing Company, and the officers and directors thereof shall be entitled to rely conclusively upon and shall be fully protected in any action omitted, taken, or suffered by them in good faith in reliance upon any enrolled actuary, independent qualified public accountant, counsel, or other specialist or other person selected by the Retirement Board or in reliance upon any tables, evaluations, certificates, opinions, or reports which shall be furnished by any of them or by the Trustee or any insurance company.  Any action so taken, omitted, or suffered in accordance with the provisions of this Section 10.6 shall be conclusive upon each Employee, former Employee, and Provisional Payee covered under the Plan.

10.7    **Accounts and Tables**.  The Retirement Board shall maintain accounts showing the fiscal transactions of the Plan, and shall keep in convenient form such data as may be necessary for actuarial valuations with respect to the operation and administration of the Plan. The Retirement Board shall annually report to the Board of Managers and provide a reasonable summary of the financial condition of the Trust and the operation of the Plan for the past year, and any further information which the Board of Managers may require.  In addition, the Retirement Board shall annually report to the Compensation Committee of the Mirant Corporation and provide a reasonable summary about significant matters concerning the operation of the Plan and the adoption of any amendments not otherwise required to be recommended by such Committee in accordance with Section 13.1. The Retirement Board may, with the advice of an enrolled actuary, adopt from time to time mortality and other tables as it may deem necessary or appropriate for use in calculating benefits under the Plan.

10.8    **Indemnity of Retirement Board**.  To the extent not compensated for by any applicable insurance, the Employing Companies shall indemnify and hold harmless each member of the Retirement Board and each Employee of the Employing Companies designated by the Retirement Board to carry out any fiduciary responsibility with respect to the Plan from any and all claims, loss, damages, expense (including counsel fees approved by the Board of Managers) and liability (including any amount paid in settlement with the approval of the Board of Managers) arising from any act or omission of such member or Employee designated by the Retirement Board in connection with the Plan or the Trust, except where the same is determined by the Board of Managers or is judicially determined to be due to a failure to act in good faith or is due to the

gross negligence or willful misconduct of such member or Employee.  No assets of the Plan may be used for any such indemnification.

10.9   **No Control of Assets.**   The Retirement Board shall not have responsibility with respect to control or management of the assets of the Plan insofar as such control or management is assigned to a person, including but not limited to an asset manager as provided herein or the trust.

The responsibility for providing a procedure for establishing and carrying out a funding policy and method for the Plan consistent with the objectives of the Plan and the requirements of Title I of ERISA shall be that of the Mirant Services, LLC Investment Review Committee.

10.10   **Claims Procedures.**   Consistent with the requirements of ERISA and the regulations thereunder of the Secretary of Labor from time to time in effect, the Retirement Board (or its delegee) shall:

(a)      provide adequate notice in writing to any Employee, former Employee, retired Employee, or Provisional Payee (each being hereinafter in the paragraph referred to as "participant") whose claim for benefit under the Plan has been denied, setting forth specific reasons for such denial, written in a manner calculated to be understood by such participant; and

(b)      afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review of the decision denying the claim.

## ARTICLE XI
## MANAGEMENT OF TRUST

**11.1    Trust.**  All assets of the Plan shall be held as a special trust for use in accordance with the Plan.  The funds of the Plan shall be held by a Trustee in trust or held by a life insurance company in accordance with the provisions of a contract with such insurance company entered into by the Trustee or the Employer.  The Trust Agreement and contract with an insurance company may from time to time be amended in the manner therein provided.

**11.2    Disbursement of the Trust Fund.**  Subject to the provisions of the Trust Agreement or contract with an insurance company, the Retirement Board shall determine the manner in which the funds of the Plan shall be disbursed pursuant to the Plan, including the form of voucher or warrant to be used in making disbursements and the due qualification of persons authorized to approve and sign the same.  The responsibility for the retention and investment of funds held by the Trustee shall lie with the Trustee and not with the Retirement Board, and the responsibility for the retention and investment of funds held by an insurance company shall lie with the insurance company and not with the Retirement Board.  However, if in accordance with a Trust Agreement forming a part of the Plan (including any pooled trust agreement in which a trust forming a part of the Plan participates) a contract with an insurance company shall be held by the Trustee as an investment of the Trust, directions may be given from time to time to the Trustee by the Board of Managers or such committee, person, or persons as may be specified in the Trust Agreement to transfer funds of the Trust to the life insurance company which issued such contract or to transfer funds from the life insurance company to the Trustee, as the case may be.

**11.3    Rights in the Trust.**  Under no circumstances shall amounts of money or other things of value contributed by the Employing Companies to the Plan, or any part of the corpus or income of the Trust held by the Trustee under the Plan, be recoverable by the Employing Companies from the Trustee or from any Employee, retired Employee, former Employee, or Provisional Payee, or be used for, or diverted to, purposes other than for the exclusive benefit of the Employees, retired Employees, former Employees, and Provisional Payees covered hereunder; provided, however, that, if after satisfaction of all liabilities of the Trust with respect to Employees, retired Employees, former Employees, and Provisional Payees under the Plan, there is any balance remaining, the Trustee shall return such balance to the Employing Companies.

**11.4    Merger of the Plan.**  The Plan shall not be merged or consolidated with, or any of its assets or liabilities transferred to, any other plan, unless each Employee included in the Plan would (if the Plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan then terminated).

**ARTICLE XII**
**TERMINATION OF THE PLAN**

12.1     **Termination of the Plan.**  The Plan may be terminated at any time by action of the Board of Managers in accordance with the amendment procedures provided in Section 13.1. Upon such termination or partial termination all Accrued Retirement Income of Employees to the date of such termination, to the extent then funded, shall become nonforfeitable and the assets of the Plan which have not previously been allocated to provide Retirement Income shall then be paid out to Employees, retired Employees, former Employees, and Provisional Payees in accordance with the applicable requirements of ERISA and regulations thereunder governing termination of "employee pension benefit plans" as defined in ERISA.  If after satisfaction of all liabilities, as provided above, there is any balance remaining in the Trust, the Trustee shall return such balance to the Employing Companies.

To the extent permitted by law, subject to the foregoing limitations, such remaining assets shall be allocated among all persons in the following categories for whom such Retirement Income or other benefits have not previously been provided, namely, (a) Employees who have been retired under the Plan, (b) Employees who at the date of termination of the Plan are included in the Plan, (c) former Employees who at the date of the termination of their employment were entitled to payment of Retirement Income in accordance with Article VIII, and (d) former Employees who have transferred to an Affiliated Employer.  Retirement Income already purchased under any contract with an insurance company will be payable in accordance with the provisions of that contract.

12.2     **Limitation on Benefits for Certain Highly Paid Employees.**

(a)     The annual payments to an Employee described in paragraph (b) below shall not exceed an amount equal to the payments that would be made to or on behalf of such Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's Accrued Retirement Income and the Employee's other benefits under this Plan (other than a Social Security supplement) and any Social Security supplement that the restricted Employee is entitled to receive.  The restrictions in this paragraph (a) do not apply, however, if:

(1)     after payment to an Employee described in paragraph (b) of all benefits payable to such Employee under this Plan, the value of this Plan's assets equals or exceeds 110% of the value of current liabilities, as defined in Code Section 412(c)(7), or

(2)     the value of the benefits payable to such Employee under this Plan for an Employee described in paragraph (b) below is less than 1% of the value of current liabilities before distribution.

(b)     The Employees whose benefits are restricted on distribution include all highly compensated employees and highly compensated former employees (as such terms are defined in Treasury Regulation Section 1.401(a)(4)-12); provided, however, that Employees whose benefits

are subject to restriction under this Section 12.2 shall be limited to only those Employees who in the current or in any previous Plan Year were one of the 25 non-excludable Employees of the Affiliated Employers with the greatest compensation from such Affiliated Employers.

# ARTICLE XIII
## AMENDMENT OF THE PLAN

13.1    **Amendment of the Plan.**

(a)     The Plan may be amended or modified at any time by the Retirement Board pursuant to its written resolutions to among other things (but without limiting the scope of the Retirement Board's authority) implement collectively bargained agreements, provide non-collectively bargained Employees those benefits granted collectively bargained Employees or such other benefits not granted collectively bargained Employees, change plan distribution options and the timing of distributions, provide for administrative efficiency, make any changes necessary or desirable to make the contributions to the Trust eligible for tax deductions, make the income of the Trust exempt from taxation, or bring the Plan into conformity or compliance with ERISA, the Code, or with other governmental regulations. Notwithstanding the foregoing, amendments or modifications which substantially increase on an on-going basis the contributions required under Article IX for any Employing Company or which significantly increase or decrease the future opportunity for Accrued Retirement Income for Employees of any Employing Company will be made by the Board of Managers, only after recommendation to and approval by the Compensation Committee of Mirant Corporation.

(b)     Notwithstanding paragraph (a) above, no amendment shall be made which has the effect of decreasing the Accrued Retirement Income of any Employee, retired Employee, former Employee, or Provisional Payee as provided under the limitations of Section 411(d)(6) of the Code.

## ARTICLE XIV
## SPECIAL PROVISIONS

14.1    **Exclusive Benefit.**  The Employing Companies intend that the Plan (including the Trust forming a part thereof) be a pension plan maintained for the exclusive benefit of its Employees and their beneficiaries subject to Section 11.3, as provided for in Section 401 of the Code, and as may be provided for in any similar provisions of subsequent revenue laws, and that the Trust shall qualify as an employees' trust which shall be exempt under Section 501(a) of the Code, and any similar provisions of subsequent revenue laws, as a trust forming part of such a plan.

14.2    **Assignment or Alienation.**

(a)    No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment (either at law or in equity), pledge, encumbrance, charge, garnishment, levy, execution, or other legal or equitable process and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge, garnish, levy, execute, or enforce other legal or equitable process against the same shall be void, nor shall any such benefit be in any manner liable for or subject to the debts, contracts, liabilities, engagements, or torts of the person entitled to such benefit.

(b)    If any Employee, former Employee, or retired Employee, or any Provisional Payee under the Plan is adjudicated bankrupt or attempts to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge any benefit under the Plan or if any action shall be taken which is in violation of the provisions of the immediately preceding paragraph, then such benefit shall cease and terminate and in that event the Retirement Board shall hold or apply the same or any part thereof to or for the benefit of such Employee, former Employee, retired Employee, or Provisional Payee in such manner as the Retirement Board may think proper.

(c)    Notwithstanding the above, the Retirement Board and Trustee shall comply with any "domestic relations order" (as defined in Section 414(p)(1)(B) of the Code) which is a "qualified domestic relations order" satisfying the requirements of Section 414(p) of the Code. The Retirement Board shall establish procedures for (1) notifying Employees and alternate payees who have or may have an interest in benefits which are the subject of domestic relations orders, (2) determining whether such domestic relations orders are qualified domestic relations orders under Section 414(p) of the Code, and (3) distributing benefits which are subject to qualified domestic relations orders.  In addition, the Retirement Board and Trustee shall permit alienation, assignment or other attachment where otherwise permitted under Code Section 401(a)(13).

(d)    Notwithstanding the above, all or a part of an Employee's Accrued Retirement Income may be reduced to satisfy his liability under the Plan due to:

(1)    his conviction of a crime involving the Plan;

(2)  a judgment, consent order or decree in an action for violation of fiduciary standards; or

(3)  a settlement involving the Department of Labor or the Pension Benefits Guarantee Corporation.

14.3  **Voluntary Undertaking**.  This Plan is strictly a voluntary undertaking on the part of the Employing Companies and shall not be deemed to constitute a contract between the Employing Companies or any other company and any Employee or to be a consideration for, or an inducement or condition of, the employment of any Employee.  Nothing contained in this Plan shall be deemed to give any Employee the right to be retained in the service of an Employing Company or to interfere with the right of the Employing Companies to discharge any Employee at any time.  Inclusion under the Plan will not give any Employee or Provisional Payee any right or claim to a Retirement Income except to the extent such right is specifically fixed under the terms of the Plan and there are funds available therefor in the hands of the Trustee or of any insurance company which may hold funds of the Plan.

IN WITNESS WHEREOF, the Board of Managers of Mirant Services, L.L.C. through its authorized officer has adopted this amendment and restatement of the Mirant Services Pension Plan for Bargaining Unit Employees this 9th day of August, 2001, to be effective as of April 16, 2001 (unless otherwise specified herein or required by law).

MIRANT SERVICES, L.L.C.

By: _____

## SCHEDULE B

## EMPLOYEES LOCATED AT MIRANT NEW YORK

Notwithstanding any Plan provision to the contrary, Employees who are collective bargaining unit members of Local 503 of the International Brotherhood of Electrical Workers who are located at Mirant New York ("New York Employees") are subject to the following terms and conditions. Section I of this Schedule B shall apply to those New York Employees hired on or before June 1, 2000, and Section II of this Schedule B shall apply to those New York Employees hired or rehired after June 1, 2000. All terms of the Plan that are not inconsistent with the terms of this Schedule shall continue to apply.

**I.**    <u>New York Employees Hired On or Before June 1, 2000.</u>

    **A.**    **Definitions**

        1.    "Accredited Service" shall mean, for each New York Employee, each "Eligibility Year of Service," as defined in this Schedule B, completed while participating in the Plan and shall not be determined in accordance with Plan Section 4.1. Notwithstanding the foregoing, Accredited Service shall not include service described in Section (I)(A)(14)(1) of this Schedule B. In addition, for the Plan Year in which a New York Employee begins participating in the Plan and the Plan Year in which such New York Employee terminates employment, if the New York Employee completes less than 1000 Hours of Service, he will be credited with a partial year of Accredited Service under rules determined by the Retirement Board that are applied uniformly to all similarly situated New York Employees, but in no event shall such partial year of Accredited Service be less than the fraction, the numerator of which is his number of Hours of Service in such Plan Year and the denominator of which is the normal number of Hours of Service in a Plan Year for full-time employment.

        2.    "Acquired New York Employee" means each New York Employee or former New York Employee of an Employing Company who was a participant in the O&R Pension Plan on June 30, 1999, and who is listed on an approved Schedule of Employees.

        3.    "Actuarial Equivalent" shall mean equivalent value when computed on the basis of the mortality tables, interest rate and other factors adopted by the Retirement Board for the particular purpose as set forth in Addendum 1 to this Schedule B.

        4.    "Annual Rate of Earnings" shall mean the annualized rate of salary or earnings on the last day immediately preceding the date the Annual Rate of Earnings is being computed.

5.    "Annuity Starting Date" means the first day of the first period for which a Retirement Income is payable.

6.    "Closing Date" means June 30, 1999.

7.    "Contingent Annuitant" means a person designated by a New York Employee or former New York Employee to receive a contingent annuitant benefit as described in this Schedule in the event of the Employee's death.

8.    "Disability Retirement Date" shall mean the first day of a calendar month not less than 30 or more than 90 days next following the receipt by the Retirement Board of an application for Disability Retirement Income pursuant to Paragraph (I)(F)(1) herein on which a New York Employee is retired on a Disability Retirement Income.

9.    "Disability Retirement Income" means a benefit under the Plan equal to a Retirement Income computed in accordance with Section (I)(E)(1) (a) or (b) of this Schedule B, as applicable, depending on the New York Employee's Disability Retirement Income Determination Date, with such amount computed on the basis of the New York Employee's Earnings and Accredited Service immediately prior to his Disability Retirement Income Determination Date.

10.   "Disability Retirement Income Determination Date" shall mean the New York Employee's Disability Termination Date or if the New York Employee was on Disability Leave in accordance with Section 4.2 of the Plan as of his Disability Retirement Date, his Disability Retirement Date.

11.   "Disability Termination Date" shall mean the date on which a New York Employee separates from service as a result of his disability.

12.   "Early Retirement Date" means the first day of the month following the date such New York Employee retires on or after his fifty-fifth (55th) birthday, provided such New York Employee has accrued ten (10) or more years of Accredited Service. Notwithstanding Section (I)(D)(3) of this Schedule B, the New York Employee's Credited Service (as such service is defined and accrued under the O&R Plan) for periods prior to April 8, 1999, and Eligible Service (as such service is defined and accrued under the O&R Plan), for periods on and after April 8, 1999 and prior to the Closing Date, shall be treated as Accredited Service for purposes of determining his Early Retirement Date.

13.   "Earnings" shall have the same meaning as set forth in Section 1.11 of the Plan modified as follows:  (1) during a Plan Year in which a New York Employee is employed, Earnings shall include the rate of salary or wages actually paid to such New York Employee; and (2) for the two year period credited in accordance with the last sentence of Section (I)(E)(1), Earnings shall have the same meaning as set

forth in (1) above, except that it shall be based on such New York Employee's Annual Rate of Earnings in effect as of his separation from service.

14.  "Eligibility Year of Service" means with respect to an Employee in the service of an Affiliated Employer:

    (1)    the twelve (12) consecutive month period commencing on the Employee's date of hire by the Affiliated Employer, provided he has completed at least 1000 Hours of Service during such twelve (12) consecutive month period;

    (2)    each Plan Year during which he has completed at least 1000 Hours of Service; and

    (3)    to the extent not resulting in duplication, each Year of Service restored to the Employee upon reemployment as provided in Section 8.3 (except that Year of Service shall be determined on a Plan Year basis for such purpose).

An Employee who completes at least 1000 Hours of Service during the twelve (12) consecutive month period commencing on the Employee's date of hire by the Affiliated Employer and who completes at least 1000 Hours of Service during the Plan Year following the Plan Year which includes his date of hire by the Affiliated Employer shall be credited with two Years of Eligibility Service as of the end of such Plan Year.

15.  "New York Employee" means each Employee of an Employing Company who is or was located at Mirant New York and who is or was a collective bargaining unit New York Employee of Local 503 and who is eligible to participate in the Plan in accordance with Section (I)(B) and retire in accordance with Section (I)(C) of this Schedule B.

16.  "Normal Retirement Date" means the first day of the month following a New York Employee's sixty-fifth (65th) birthday.

17.  "O&R Plan" means the Employees' Retirement Plan of Orange and Rockland Utilities, Inc. as it existed on the Closing Date without regard to any amendment thereafter.

18.  "Spouse Joint and Survivor Benefit" means the Retirement Income which shall be payable to the New York Employee or former New York Employee for his lifetime with provision for continuation of an amount equal to fifty-percent (50%) of such monthly benefit to be paid to his surviving spouse for the spouse's lifetime after his death.  The benefit to the New York Employee or former New York Employee shall be equal to the Actuarial Equivalent of the benefit set forth in Section (I)(E)(1) of this Schedule B which is payable on a single life basis.

19. "Terminated New York Employee" means a former New York Employee vested in a benefit under the Plan who terminates employment with an Employing Company other than for retirement, death or disability.

20. "Totally and Permanently Disabled" means the disability of a New York Employee where the Retirement Board shall find to its satisfaction either (1) that a physician designated by the New York Employee and a physician designated by the Retirement Board have each certified an opinion that such New York Employee is totally incapacitated, mentally or physically, from the further performance of his regular duties or duties comparable thereto, and that such incapacity occurred while the New York Employee was in active service with an Employing Company, resulted in termination of employment with an Employing Company, and is likely to be permanent; or (2) that such New York Employee is eligible for and in receipt of a disability benefit under the Social Security Act, as amended from time to time, with respect to a disability within the meaning of subparagraph (1) above which occurred while in active service with an Employing Company and resulted in termination of employment with the Employing Company. If the opinions of the physicians designated under (1) above differ as to whether the New York Employee is totally incapacitated as set forth therein, the certified opinion of a third physician, rendered after examination of the New York Employee and, to the extent deemed appropriate by the third physician, consultation with the other two physicians, shall determine the issue under (1) above as to whether the New York Employee is totally incapacitated. The third physician shall be selected by the New York Employee from a list of three names of independent physicians provided by the Retirement Board. The fees and expenses of the third physician shall be paid by the Employing Company.

21. "Vesting Year of Service" means each Vesting Year of Service as defined and accrued under the Plan except that a Year of Service for such purpose shall mean each Plan Year during which a New York Employee has completed at least 1000 Hours of Service.

**B.      Eligibility**

1. Each Acquired New York Employee shall become a participant in this Plan on July 1, 1999, and shall be fully vested under this Schedule B. Each other New York Employee hired on or before June 1, 2000 shall become a participant in the Plan on the first day of the month next following the date on which he first completes one Eligibility Year of Service and shall be subject to the terms of this Section (I).

**C.      Retirement**

1. All references in the Plan to age fifty (50) shall be replaced with references to Early Retirement Date as defined in this Schedule B.

0343307 - BU restated                              Sch. B-4