**EXHIBIT 3 (a)**

# IF YOU DIE

**While actively employed**

If you die while in active service before retirement and are vested, your surviving spouse (if married to you during the one-year period before your death) will receive a lifetime monthly benefit equal to ½ of the benefit you would have received if you retired as of the first day of the month on or after death and were then age 65. If your surviving spouse is more than 2 years younger than you at the time of your death, the spouse's benefit is reduced by 1% for each full year there is an age difference – starting with a difference of 2 years. For example, if you die at age 50 and your spouse is age 46, your spouse's benefit would be reduced by 2%.

If you die while in active service and are:

- Not vested, or
- Not married for at least one year,

there are <u>no</u> death benefits payable from the Plan on your behalf.

**After you leave Mirant but before your Early or Normal Retirement Benefit has started**

If you are vested, end employment with Mirant on or after either your Early or Normal Retirement Date, have <u>not</u> waived the vested member spouse's coverage and die before your benefit begins, then your surviving spouse (if married to you throughout the one-year period before your death) will receive a benefit for life. The spouse's benefit will be equal to the spouse's portion of the 50% Joint and Survivor Benefit. The benefit will be determined as if the Retirement Benefit had begun in that form of payment as of the first day of the month on or after your death, and will begin with the first day of the month on or after your death (unless your spouse elects to postpone the payments).

**After you leave Mirant but before your Vested Benefit has started**

If you are vested, end employment with Mirant before your earliest possible retirement date, have <u>not</u> waived the vested member spouse's benefit coverage, and die before your vested retirement benefit would otherwise begin, your surviving spouse (if married to you throughout the one-year period before your death) will receive a lifetime benefit equal to the spouse's portion of the 50% Joint and Survivor Benefit. The benefit is calculated as of the date the benefit is to begin to the spouse. The vested member spouse's benefit can begin *no earlier than* the first day of the month on or after the later of:

- your death, or
- the date you would have first been eligible for a deferred vested retirement benefit.

If you had at least 10 years of Accredited Service when you left Mirant, the benefit to your spouse will begin with the first of the month on or after your death, or the date you would have been age 55, whichever is later, unless your spouse elects to postpone the payments. There will be a reduction of 6% per year (or ½ of 1% for each calendar month) that the benefit is paid before the date you would have been age 65.

Just like any other form of insurance, there is a charge for the vested member spouse's benefit. The charge is based on your age and the number of years the protection is in force. It begins on your termination date and ends on the date your retirement benefit commences, unless this protection is waived. You can waive this death benefit for the future by submitting a written request to the Plan Administrator provided, if you are married, your spouse consents on a notarized waiver form provided by the Committee or its designee.

When you start your vested retirement benefit, your benefit (or your spouse's benefit, if you die) is reduced to account for the charge for the vested member spouse's benefit protection you received from your termination date up to the date that benefits begin as shown below:

| Age Bracket | Reduction Factor for Each Year of Coverage |
|---|---|
| 39 and under | .10% |
| 40 to 44 | .15% |
| 45 to 49 | .20% |
| 50 to 54 | .35% |
| 55 to 59 | .55% |
| 60 and over | .80% |

If you die before your vested retirement benefit begins, and you have waived the surviving spouse's benefit coverage, no vested spouse's benefit will be paid to your spouse.

When you end your employment with Mirant, if you are entitled to a vested retirement benefit, the Plan Administrator will send you a notice explaining the:

- vested member spouse's benefit
- elections available to you, and
- forms necessary for electing or waiving the death benefit.

**After your pension payments have begun**
If you die after payments have begun (or are scheduled to begin), the form of payment you selected will determine:

- whether any death benefits are payable,
- who is entitled to receive the benefits, and
- the amount of the benefits.

For example, if you are receiving your benefit in the form of a Single Life Annuity, no death benefits would be payable.

**Paying Small Survivor Benefits (Cash-Outs)**
If the present value of your spouse's survivor benefit is $5,000 or less after your death, your spouse will receive his or her benefit as a single lump-sum payment (cash-out). The **Mirant**

21

**Pension Service Center (1-888-744-4881)** will value your spouse's benefit and let your spouse know whether he or she will receive a single lump sum payment or future monthly installments.

If your spouse is eligible to receive a lump-sum payment, he or she will receive it as cash. The lump-sum payment they receive will cash out your spouse's entire interest in the Plan and no additional benefits will be paid from the Plan.

Likewise, if you are a terminated employee who received a lump-sum payment from the Plan when your employment terminated, your entire interest in the Plan was cashed out at that time and no additional benefits are payable to either you or your spouse.

# IF YOUR SERVICE IS INTERRUPTED

The service rules described in this section provide a **general** explanation of what happens to your Eligibility, Vesting and Accredited Service if your employment with Mirant contains a break-in-service. Some details have been omitted. You should contact the **Mirant Pension Service Center at 1-888-744-4881** for specific information regarding your years of service.

If you leave Mirant before you are vested, and are later re-employed, you might lose the service you built up during your earlier Mirant employment. Whether or not you will lose your previous service will depend on whether you have a "break-in-service" and on how long it lasts. A "break-in-service" occurs if you have 500 or fewer Hours of Service in an anniversary year. You do not actually have to leave Mirant to have a break-in-service.

The following are general guidelines:

- **If you are not vested** when you leave Mirant, **and if your break-in-service lasts 5 years or longer,** you will lose the Eligibility, Vesting and Accredited Service you built up before the break-in-service.
- **If you are not vested** when you leave Mirant, **and if your break-in-service lasts less than 5 years,** your Eligibility, Vesting and Accredited Service will be reinstated after you return to Mirant.
- **If you are vested** when you leave Mirant, you will not lose any service. Your prior Eligibility, Vesting and Accredited Service will be reinstated when you return.

If you were not a Plan participant during your first period of employment because you had not met the eligibility requirements, your Plan participation will begin on the first of the month after you meet those eligibility requirements assuming you meet the above criteria upon reemployment.

If you are re-employed after June 1, 2000, the above provisions will apply to you. However, the benefits you will receive upon re-employment are described in another SPD. Please call the Mirant Pension Service Center at 1-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 to obtain a copy.

# OTHER IMPORTANT INFORMATION

**Maximum Pension Benefit**
Because this is a tax-qualified pension plan, your annual pension benefit payable from the Plan cannot exceed certain statutory maximum amounts. Additionally, if your pay exceeds certain statutory maximum amounts, only a portion of your pay can be considered for purposes of calculating your pension benefit under the Plan. These limitations generally increase with inflation from year to year, but can be changed by future legislation (even decreased).

Additionally, you may be eligible to participate in certain non-tax-qualified plans maintained by Mirant for the purpose of restoring these limitations on your benefits. However, not all employees who are affected by these limits are eligible to participate in these plans due to additional IRS restrictions. You will be notified by Mirant human resources if you are affected by these governmental limitations or if you become eligible to participate in the non-tax-qualified plans.

**Assignment**
The Plan provides that your rights may not be assigned and cannot be subject to attachment (or in any other way subject to the claims of creditors); however, pursuant to a Qualified Domestic Relations Order issued by a court, the Plan may be required to make payments to a former spouse or other payee. In addition, your benefit under the Plan may be reduced to satisfy your liability under the Plan due to your conviction of a crime involving the Plan, your breach of fiduciary duty, or a settlement involving the Department of Labor or the Pension Benefit Guaranty Corporation.

**Qualified Domestic Relations Orders**
A court could order the Plan to pay part or all of your benefit to your spouse, former spouse, child or another dependent. To be qualified, the order must meet certain requirements. For example, it must state that the benefit can only be paid in a form allowed by the Plan. The Americas Benefits Committee has established procedures for handling domestic relations orders. For more information or to obtain a copy of the Qualified Domestic Relations Order procedures contact Mirant human resources.

**Taxes on Your Benefits**
You do not pay income tax on your pension benefit until you begin receiving payments. Your payments are taxed as ordinary income. When you start receiving your benefit, you can choose whether or not to have Federal income taxes withheld from your monthly payment. If you do not choose, the Plan will withhold taxes based on IRS regulations.

If you receive a lump sum payment from the Plan, the lump sum will be subject to 20% Federal income tax withholding. You can avoid this withholding and defer taxes by instructing the Mirant Pension Service Center to deposit this payment into an Individual Retirement Account or another employer's qualified retirement plan.

**Rights to Employment**
Your participation in the Plan may entitle you to receive benefits from the Plan. It does not, however, give you any right to be retained as an employee of Mirant or to receive any other benefits.

**Corrections for Mistakes or Misstatements**
In the case of mistakes or misstatements regarding eligibility, participation, service, or amount of payment for a participant or beneficiary, the Plan administrator will try to correct these situations. The correction may be accomplished by withholding, accelerating, or adjusting future benefit payments from the Plan. Additionally, if payment is delayed for administrative reasons beyond your elected retirement date, your first payment from the Plan will include the missed monthly payment amounts.

**Top Heavy Rules**
The Plan will be "Top Heavy" if more than 60% of the accrued benefits provided under the Plan are for "Key employees." Key employees are determined under specific rules established by federal statute.

# CLAIMS PROCEDURES

When you are ready to retire or if you meet the eligibility requirements for a Disability Retirement Benefit and would like to apply for a Disability Retirement Benefit, contact the **Mirant Pension Service Center at 1-888-744-4881**. The Mirant Pension Service Center will provide you with forms, an explanation of how your benefit is determined, your payment options and any other information necessary to apply for benefits.

## Retirement Benefit Claims (applicable to all benefits except Disability Retirement Benefits)

The forms to be completed and returned to the Mirant Pension Service Center are:

- Application for Pension Benefits
- Pension Option Election Form (including spousal consent if applicable)
- Tax Withholding Form
- Direct Deposit Form

*Informal inquiries* may be made by calling the Mirant Pension Service Center but your inquiry will not be considered a claim for a benefit (and therefore will not trigger these claims procedures) unless your inquiry is submitted in writing.

If your written application for your benefit or your written inquiry regarding your benefit (referred to in the rest of this section as your "claim") is either completely or partially denied, you will receive a written response from the Mirant Pension Service Center within a reasonable period, but not later than 90 days after your written claim is received (in cases where the Mirant Pension Service Center has determined that special circumstances require an extension of time, you will be provided with a written explanation of the special circumstances within 90 days and you will be provided with a written explanation of the Mirant Pension Service Center's response within 180 days).

Notice of any denial of your claim will include:

- Specific reasons stating why the claim was denied;
- Specific references to applicable provisions of the Plan document on which the denial is based;
- A description of any additional material or information needed to process the claim and an explanation of why such material or information is necessary; and
- An explanation of the claims review procedure, including the time limits applicable to such procedure, as well as a statement notifying you of your right to bring a civil action under Section 502(a) of ERISA if your claim for benefits is denied, in whole or in part, on appeal.

26

If you are not satisfied that your claim for benefits was properly denied, you may appeal the denial of benefits to:

> Americas Benefits Committee
> 1155 Perimeter Center West
> Atlanta, GA  30338-5416

The Americas Benefits Committee (the "Committee") or its delegate will review your appeal. You may submit written comments, documents, records or other information relating to your claim for the Committee to review as part of your appeal.  You may also obtain reasonable access to and copies of all documents, records and other information relevant to your claim for benefits.  The Committee or its delegate has 60 days (after you have requested the appeal in writing and have furnished the necessary information) to review your claim.  In special circumstances requiring a delay, you will receive notice of the special circumstances within 60 days and notice of the final decision no later than 120 days after your appeal is received.  The Committee will notify you of its decision in writing, specifying the reasons for the decision.  If the Committee's decision is an adverse benefit determination, the notification will include the following:

- The specific reason(s) for the adverse determination;
- Reference to the specific Plan provisions on which the determination is based;
- A statement that you are entitled to receive without charge reasonable access to any documents, records or other information relevant to your claim (a relevant document, record or other information includes those documents, records or other information (1) relied on in making the benefit determination; (2) submitted, considered or generated in the course of making the benefit determination; or (3) that demonstrate compliance with the administrative processes and safeguards required in making the determination); and
- A statement of any voluntary appeals procedures and your right to receive information about the procedures as well as your right to bring a civil action under Section 502(a) of ERISA.

### Disability Retirement Benefit Claims

The forms to be completed and returned to the Mirant Pension Service Center are:

- Application for Disability Retirement Benefits
- Pension Option Election Form (including spousal consent if applicable)
- Tax Withholding Form
- Direct Deposit Form

*Informal inquiries* may be made by calling the Mirant Pension Service Center but your inquiry will not be considered a claim for a benefit (and therefore will not trigger these claims procedures) unless your inquiry is submitted in writing.

The Mirant Pension Service Center will forward your written application for benefits or your written inquiry regarding your benefit (referred to in the rest of this section as your "claim") to the appropriate party responsible for determining your claim.  (This party will be a delegate of

the Americas Benefit Committee, the Plan Administrator.)  If your claim is either completely or partially denied, you will receive a written response from the Mirant Pension Service Center within 45 days after your written claim is received by the Mirant Pension Service Center.  The 45 day period may be extended for up to two 30-day periods if additional time is needed due to circumstances beyond the control of the Plan.  The Mirant Pension Service Center will notify you within the 45 day-period or the first 30 day period, whichever is applicable, of the reason for the extension and the anticipated date of the decision.  If the extension is due to your failure to submit necessary information, the deadline for providing the written response to you will be tolled until you provide the necessary information.

Notice of your claim denial will include:

- Specific reason(s) stating why the claim was denied;
- Specific references to applicable provisions of the Plan document or other relevant documents on which the denial is based and information on where you may see them (a relevant document includes those documents (1) relied on in making the determination; (2) submitted, considered or generated in the course of making the benefit determination; (3) that demonstrates compliance with the administrative processes and safeguards required in making the determination; or (4) constitutes a statement of policy or guidance with respect to the Plan concerning the denied treatment without regard to whether the statement was relied on);
- A description of any additional material or information needed to process the claim and an explanation of why such material or information is necessary;
- An explanation of the claims review procedure, including the time limits applicable to such procedure, as well as a statement notifying you of your right to bring a civil action under Section 502(a) of ERISA if your claim for benefits is denied, in whole or in part, on appeal;
- A copy of any internal rule, guideline, protocol or other similar criteria relied on in making the adverse benefit determination, or a statement that it will be provided without charge upon request; and
- If the adverse determination is based on medical necessity or experimental treatment or a similar exclusion or limit, either an explanation of the scientific or clinical judgment, applying the terms of the plan to your medical circumstances, or a statement that this will be provided without charge upon request.

If you are not satisfied that your claim for benefits was properly denied, you may appeal the denial of benefits within 180 days of the denial of your claim.  Your appeal must be in writing and should be sent to:

Americas Benefits Committee
1155 Perimeter Center West
Atlanta, GA  30338-5416

The Americas Benefits Committee (the "Committee") or its delegate will review your appeal. The Committee's delegate will not be the same person who initially denied your claim, nor will such delegate be subordinate of that person.  You may submit written comments, documents, records or other information relating to your claim for the Committee to review as part of your

appeal. You may also obtain reasonable access to and copies of all relevant documents related to your claim for benefits.

During the review of your appeal, no deference will be given to the initial determination of your claim. In addition, your appeal will be reviewed in a manner that takes into account all written evidence, documentation, and other information related to your claim and submitted on your behalf, regardless of whether such information was submitted or considered in the initial determination. If your initial claim denial is based, in whole or in part, upon a medical judgment, a health care professional who has the appropriate level of experience and training in the field of medicine involved with the medical judgment will be consulted during review of your appeal. If a health care professional is consulted during the review of your appeal, the health care professional will not be the person who was consulted during the initial determination of your claim, nor be subordinate to such person. Moreover, in the event that any advice is sought from any health care or vocational professionals in connection with the determination of your appeal, you will be provided with the professional's identity even if the advice was not relied upon in deciding your appeal.

The Committee or its delegate has 45 days to review your appeal. If circumstances beyond the control of the Plan require a delay, you will receive notice of the circumstances and the expected decision date within 45 days of the date of your appeal. Generally, the extended period for review of your appeal will be 45 days. However, if the extension is due to your failure to submit necessary information, the deadline for providing the written response to you will be tolled until you provide the necessary information.

The Committee will provide you with written notice of its decision on review of your appeal. In the case of an adverse benefit determination, the notification will include the following:

- The specific reason(s) for the adverse determination;
- Reference to the specific Plan provisions on which the determination is based;
- A statement that you are entitled to receive without charge reasonable access to any relevant documents (as defined above);
- A statement of any voluntary appeals procedures and your right to receive information about the procedures as well as your right to bring a civil action under Section 502(a) of ERISA;
- A copy of any internal rule, guideline, protocol or other similar criteria relied on in making the adverse determination or a statement that it will be provided without charge upon request;
- If the adverse determination is based on medical necessity or experimental treatment or a similar exclusion or limit, either an explanation of the scientific or clinical judgment, applying the terms of the Plan to your medical circumstances, or a statement that this will be provided free of charge upon request; and
- The following statement: "You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency."

29

The above claims procedures apply to a claim for benefits by a participant, alternate payee, surviving spouse and beneficiaries, as applicable.

The above claims procedures also apply to any appeal of the Committee's interpretation of a proposed domestic relations order pursuant to the Administrative Procedures Regarding Qualified Domestic Relations Order. For a copy of these Administrative Procedures, please call Mirant human resources.

# YOUR RIGHTS IF THE PLAN IS AMENDED OR ENDS

**Amendment and Continuation of the Plan**

This Plan is maintained pursuant to a Collective Bargaining Agreement between Mirant and Local Union 503 of the International Brotherhood of Electrical Workers. Any amendment or termination of the Plan is subject to negotiations as it affects bargaining unit employees.

In all other respects, while Mirant intends to continue this Plan indefinitely, Mirant reserves the right to modify or terminate the Plan at any time. The Board of Managers is empowered to amend the Plan, except that the Committee may also amend the Plan provided such amendment does not have a material effect on the cost of the Plan. If the Plan were terminated, you would not forfeit the benefits you had accrued up to that point. Furthermore, if you were vested when the Plan terminated, you would be entitled to retirement income based on the contributions that Mirant had made to the Plan before termination.

**Plan Termination Insurance**

The Pension Benefit Guaranty Corporation ("PBGC") is a federal insurance organization created under the Employee Retirement Income Security Act of 1974 ("ERISA") to provide limited protection against the loss of benefits upon plan termination where plan assets are inadequate. Generally, the PBGC guarantees most vested, normal-age retirement benefits, early retirement benefits, and certain survivor's pensions. However, the PBGC does not guarantee all types of benefits, and the amount of insurance is subject to certain limitations.

PBGC guarantees that you will receive your vested benefits according to the provisions in effect on the date the Plan terminates. However, if benefits have been increased within the 5 years before the Plan terminates, the entire amount of the increase may not be guaranteed. In addition, there is a ceiling (adjusted periodically) on the size of a monthly benefit that the PBGC guarantees.

For more information on the PBGC retirement insurance and its limitations, contact the **Mirant Pension Service Center at 1-888-744-4881** or the PBGC. Inquiries to the PBGC should be addressed to:

Pension Benefit Guaranty Corporation
1200 K Street, NW
Washington, DC 20005
www.pbgc.gov

# ADMINISTRATIVE INFORMATION

**Plan Name**
Mirant Services Pension Plan for Bargaining Unit Employees

**Participants**
The Plan provides benefits for employees of Mirant Services, LLC and certain of its affiliates.

**Effective Date**
The Plan was originally effective January 1, 1999, and is effective as described herein as of April 16, 2001.

**Name and Address of Employer**
Mirant Services, LLC
1155 Perimeter Center West
Atlanta, Georgia 30338

**Employer Identification Number (EIN)**
58-2589992

**Plan Number**
053

**Plan Administrator and Agent for Service of Legal Process**
Americas Benefits Committee
Mirant Services, LLC
1155 Perimeter Center West
Atlanta, GA 30338

**Type Plan**
Pension—Defined Benefit

**Plan Trustee**
State Street Bank and Trust Company, N.A.
Retirement Investment Services
125 Sunnynoll Court, Suite 200
Winston-Salem, NC 27106

**Plan Records**
The Plan's fiscal records are kept on a Plan Year basis which is the 12-month period beginning on January 1 and ending on December 31.

32

# ERISA STATEMENT OF RIGHTS

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA provides that Plan participants shall be entitled to:

- Examine, without charge, in the Employee Benefits Department, all Plan documents, including insurance contracts and copies of all documents filed by the Plan with the U.S. Department of Labor. These include detailed annual reports and Plan descriptions.

- Obtain copies of all Plan Documents and other Plan information upon written request to the Plan Administrator. The Administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

- Obtain a statement telling you whether you have a right to receive a pension at normal retirement age and if so, what your benefits would be at normal retirement age if you stop working under the Plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and is not required to be given more than once a year. The Plan must provide the statement free of charge.

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plans. The people who operate your Plan, called 'fiduciaries' of the Plan, have a duty to do so prudently, and in the interest of Plan participants and beneficiaries.

No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.

If your claim for a benefit is denied, in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Plan Administrator review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in state or federal court.

If you believe your rights have been violated, you may seek assistance from the U.S. Department of Labor or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees. If you have questions about your Plan, you should contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Ave., NW, Washington, D.C. 20210. You also may obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration at 1-800-998-7542.

# EXAMPLE (GROUP 1) – RETIREMENT BEFORE 01/01/01

Joe is planning to retire on July 1, 2000.  His data and history are as follows:

| | |
|---|---:|
| Date of Birth | 05/19/45 |
| Date of Hire | 10/06/78 |
| Date of Plan Participation | 11/01/79 |
| Date of Retirement | 07/01/00 |
| Salary at Acquisition 06/30/99 | $45,000 |
| Monthly O&R Accrued Benefit | $1,200.00 |
| 1999 Earnings for the period 7/1 to 12/31 | $22,500 |
| 2000 Earnings for the period 1/1 to 06/30 | $23,000 |

Joe's data at retirement

| | |
|---|---:|
| Salary | $46,000 |
| Accredited Service is 20 years, 8 months, rounded to | 21 |
| Age is 55 years, 1 month, rounded to | <u>55</u> |
| Joe has not satisfied Rule of 85 | 76 |

| | | |
|---|---|---:|
| (1) | O&R Accrued Benefit at 07/01/99 | $1,200.00 |
| (2) | Remove O&R Severance Benefit  [$45,000 x 2 x 2%] / 12 | ($150.00) |

*This adjustment keep the gross benefit equivalent to what O&R would have provided if accruals continued under that plan to retirement without the termination at 06/30/99.*

| | | |
|---|---|---:|
| (3) | Adjusted O&R Accrued Benefit at 07/01/99 [(1) – (2)] | $1,050.00 |
| (4) | Benefits accrued since 07/01/99 | |

| Year | Earnings | Special Multiplier | Rate | Annual Accrual |
|---|---|---|---|---:|
| 1999 | $22,500 | | x 2% = | $450.00 |
| 2000 | $23,000 | | x 2% = | $460.00 |
| Final | $46,000 | x 2 | x 2% = | $1,840.00 |
| | | | Annual Total | $2,750.00 |
| | | | Monthly Total | $229.17 |

35

## EXAMPLE FOR GROUP 1 (continued)

| | | |
|---|---|---|
| (5) | Gross Normal Retirement Benefit  [(3) + (4)] | $1,279.17 |
| (6) | Early Retirement Factor [4% per year prior to age 60] | 80.3333% |
| (7) | Gross Early Retirement Benefit [(5) × (6)] | $1,027.60 |
| (8) | O&R Early Retirement Factor [6% per year prior to age 65] | 40.5000% |

*The factor used here depends on eligibility at acquisition (06/30/99). Since Joe was eligible for a deferred vested benefit at acquisition, the deferred vested factor is used. If, instead, Joe was eligible for an early retirement benefit, then early retirement factors would be used. If Joe had satisfied Rule of 85 at acquisition, then no reduction would be applied.*

| | | |
|---|---|---|
| (9) | O&R Early Retirement Benefit [(1) × (8)] | $486.00 |
| (10) | Net Mirant Early Retirement Benefit [(7) – (9)] | $541.60 |
| (11) | Temporary Supplement to age 62 | Not eligible |

## EXAMPLE (GROUP 2) – RETIREMENT ON/AFTER 01/01/01

Mary is planning to retire on July 1, 2005.  Her data and history are as follows:

| | |
|---|---|
| Date of Birth | 06/14/47 |
| Date of Hire | 10/20/83 |
| Date of Plan Participation | 11/01/84 |
| Date of Retirement | 07/01/05 |
| Salary Rate on 06/01/96 (provided by O&R) | $45,700 |
| Accredited Service (years) on 12/31/1995 (provided by O&R) | 11.16667 |
| Salary at Acquisition 06/30/99 | $47,100 |
| Monthly O&R Accrued Benefit | $987.00 |
| 1996 Earnings (provided by O&R) | $45,500 |
| 1997 Earnings (provided by O&R) | $46,000 |
| 1998 Earnings (provided by O&R) | $46,500 |
| 1999 Earnings  [$23,600 from Mirant and $23,400 provided by O&R] | $47,000 |
| 2000 Earnings | $47,800 |
| 2001 Earnings | $48,700 |
| 2002 Earnings | $49,500 |
| 2003 Earnings | $50,500 |
| 2004 Earnings | $52,000 |
| 2005 Earnings for the period 1/1 to 7/1 | $26,700 |

Mary's data at retirement

| | |
|---|---|
| Salary | $55,000 |
| Accredited Service is 20 years, 8 months, rounded to | 21 |
| Age is 58 years, 0 months, rounded to | <u>58</u> |
| Mary has not satisfied Rule of 85 | 79 |

## EXAMPLE FOR GROUP 2 (continued)

### Benefit based on Formula 1

| | | |
|---|---|---:|
| (1) | O&R Accrued Benefit at 07/01/99 | $987.00 |
| (2) | Remove O&R Severance Benefit [$47,100 × 2 × 2%] / 12 | ($157.00) |

*This adjustment keep the gross benefit equivalent to what O&R would have provided if accruals continued under that plan to retirement without the termination at 06/30/99.*

| | | |
|---|---|---:|
| (3) | Adjusted O&R Accrued Benefit at 07/01/99 [(1) – (2)] | $830.00 |
| (4) | Benefits accrued since 07/01/99 | |

| Year | Earnings | Special Multiplier | Rate | Annual Accrual |
|---|---|---|---|---:|
| 1999 | $23,600 | | × 2% = | $472.00 |
| 2000 | $47,800 | | × 2% = | $956.00 |
| 2001 | $48,700 | | × 2% = | $974.00 |
| 2002 | $49,500 | | × 2% = | $990.00 |
| 2003 | $50,500 | | × 2% = | $1,010.00 |
| 2004 | $52,000 | | × 2% = | $1,040.00 |
| 2005 | $26,700 | | × 2% = | $534.00 |
| Final | $55,000 | × 2 | × 2% = | $2,200.00 |
| | | | Annual Total | $8,176.00 |
| | | | Monthly Total | $681.33 |

| | | |
|---|---|---:|
| (5) | Gross Formula 1 Normal Retirement Benefit  [(3) + (4)] | $1,511.33 |

### Benefit based on Formula 2

| | | |
|---|---|---:|
| (6) | Monthly Pay Rate on 06/01/96 [$45,700 / 12] | $3,803.33 |
| (7) | Accredited Service on 12/31/95 | 11.16667 |
| (8) | Monthly Accrued Benefit on 01/01/96 [$3,803.33 × 1.5% × 11.16667] | $637.06 |

38

**EXAMPLE FOR GROUP 2 (continued)**

(9)    Benefits accrued since 12/31/95

| Year | Earnings | Special Multiplier | Rate | Annual Accrual |
|------|----------|--------------------|------|----------------|
| 1996 | $45,500 | | × 2% = | $910.00 |
| 1997 | $46,000 | | × 2% = | $920.00 |
| 1998 | $46,500 | | × 2% = | $930.00 |
| 1999 | $47,000 | | × 2% = | $940.00 |
| 2000 | $47,800 | | × 2% = | $956.00 |
| 2001 | $48,700 | | × 2% = | $974.00 |
| 2002 | $49,500 | | × 2% = | $990.00 |
| 2003 | $50,500 | | × 2% = | $1,010.00 |
| 2004 | $52,000 | | × 2% = | $1,040.00 |
| 2005 | $26,700 | | × 2% = | $534.00 |
| Final | $55,000 | × 2 | × 2% = | $2,200.00 |
| | | | Annual Total | $11,404.00 |
| | | | Monthly Total | $950.33 |

| | | |
|-----|------|------|
| (10) | Gross Formula 2 Normal Retirement Benefit  [(8) + (9)] | $1,587.39 |
| (11) | Gross Normal Retirement Benefit  [max of (5) and (10)] | $1,587.39 |
| (12) | Early Retirement Factor [4% per year prior to age 60] | 92.0000% |
| (13) | Gross Early Retirement Benefit [(11) × (12)] | $1,460.40 |
| (14) | O&R Early Retirement Factor [6% per year prior to age 65] | 58.0000% |

*The factor used here depends on eligibility at acquisition (06/30/99).  Since Mary was eligible for a deferred vested benefit at acquisition, the deferred vested factor is used.  If, instead, Mary was eligible for an early retirement benefit, then early factors would be used.  If Mary had satisfied Rule of 85 at acquisition, then no reduction would be applied.*

| | | |
|-----|------|------|
| (15) | O&R Early Retirement Benefit [(1) × (14)] | $572.46 |
| (16) | **Net Mirant Early Retirement Benefit** [(13) – (15)] | $887.94 |
| (17) | Temporary Supplement to age 62 | $600.00 |

# EXAMPLE OF BENEFIT ADJUSTMENT AFTER RETIREMENT

Jim is retiring with a net Mirant benefit of $1,000.00 beginning on July 1, 2000. The table below illustrates a possible scenario.

| Year | Annual Inflation (1) | Cumulative Inflation (2) | Cumulative Inflation less 20% (3) | 75% of (3) in prior year (4) | Max Adjustment (5) | Final Adjustment (6) | Monthly Payment (7) |
|------|------|------|------|------|------|------|------|
| 2000 | 2.94% | 2.94% | | | | | $1,000.00 |
| 2001 | 2.92% | 5.95% | | | | | $1,000.00 |
| 2002 | 3.00% | 9.13% | | | | | $1,000.00 |
| 2003 | 3.52% | 12.97% | | | | | $1,000.00 |
| 2004 | 3.29% | 16.69% | | | | | $1,000.00 |
| 2005 | 2.78% | 19.93% | | | | | $1,000.00 |
| 2006 | 3.10% | 23.65% | 3.65% | | | | $1,000.00 |
| 2007 | 3.20% | 27.61% | 7.61% | 2.74% | 3.00% | 2.74% | $1,027.40 |
| 2008 | 3.90% | 32.59% | 12.59% | 5.71% | 6.09% | 5.71% | $1,057.10 |
| 2009 | 3.62% | 37.39% | 17.39% | 9.44% | 9.27% | 9.27% | $1,092.70 |

Notes:
(1) Annual inflation as measured by the Consumer Price Index for All Urban Consumers, U.S. City Average of all items, U.S. Bureau of Labor Statistics.
(2) The cumulative product of Column (1), e.g., for 2003, 1.1297 = 1.0913 x 1.0352.
(3) Column (2) minus 20%.
(4) 75% of Column (3) for prior year, e.g., for 2008, 5.71% = 75% x 7.61%.
(5) The cumulative product of the maximum 3% per year adjustment, e.g., for 2008, 1.0609 = 1.0300 x 1.0300.
(6) Minimum of Columns (4) and (5).
(7) $1,000.00 x [1 + Column (6)], e.g., for 2009, $1,092.70 = $1,000.00 x 1.0927. Payment of the increased benefit would begin July 1, 2009.